Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* Placido Sortino, Appellant.

Submitted on briefs April 4, 1983, to Judges BLATT, MACPHAIL and DOYLE, sitting as a panel of three.

*Thomas J. Hines,* Assistant Counsel, with him *Harold H. Cramer,* Assistant Counsel, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*John E. Gallagher,* for appellee.

OPINION BY JUDGE MACPHAIL, July 19, 1983:

On May 1, 1980, at 10:00 A.M., a Pennsylvania State Trooper conducted an unannounced examination of the records of inspection maintained by Placido Sortino at his inspection station. The Trooper discovered that the records listed inspections of twenty-eight vehicles as having been performed on "5/ /80" without specification of the day of the month. Also, other required information was missing in the records for various of the twenty-eight vehicles. Sortino admitted that some of the inspections were performed during the last few days of April, 1980, before the May inspection campaign began, however, he stated that the stickers for all of the vehicles were affixed on May 1 and that the vehicles remained on his premises from the time they were inspected until the stickers were affixed.[1]

---

[1] We note that the Bureau does not allege that Sortino issued inspection stickers for unfit vehicles, nor does it assert that the inspections were faulty since some were performed prior to the May campaign, or because the stickers were affixed a few days after the inspections were made. Nor does the Bureau contend the inspections were faulty because more than the allowed number of vehicles were inspected during each hour. What the Bureau does argue is that a faulty inspection took place since the records were "fraudulently recorded."

The Department of Transportation, Bureau of Traffic Safety (Bureau) suspended Sortino's inspection station privileges for 79 years and 6 months on the basis of 28 counts of "faulty inspection" and 28 counts of "fraudulent record keeping."[2] 67 Pa. Code §175.221(8)(iii) and (iv) (Code) (now §175.51(a)). After a de novo hearing the Court of Common Pleas of Northampton County found the evidence insufficient to sustain either charge but did find that the evidence would support a charge of careless record keeping.[3] The trial court reduced the suspension to one year. The Bureau appeals.

In its appeal to this Court the Bureau contends that the trial court erred when it found that the evidence did not support a "faulty inspection" violation. The trial court concluded that the Bureau failed to establish that the inspections were faulty on the basis that no certified mechanic was present.[4] We agree that the Bureau has failed to show by implication or otherwise that Sortino, a certified mechanic, did not perform all of the inspections. Nor did the evidence

---

[2] The citation against Sortino charged him with 28 inspections performed with no certified mechanic present and careless or fraudulent record keeping. The suspension order was for faulty inspections and fraudulent record keeping.

[3] On January 18, 1982, upon application for reconsideration, the trial court vacated its conclusion in the December 15, 1981 decision that Sortino committed improper record keeping within the intendment of 67 Pa. Code §175.221(8)(iii) since the prohibition against improper record keeping was not in effect on May 1, 1980, the date of the violation. Rather, the trial court held that Appellant committed 28 violations of the prohibition against "careless record keeping" which was in effect on the date of the violations. 67 Pa. Code §175.221(1). The Code was subsequently amended October 4, 1980 to include the offense of improper record keeping.

[4] Trooper Joseph Marakovits testified that he did not know, nor did he have other witnesses to testify as to whether Sortino actually did the inspections.

544

prove that Sortino was not present during the inspections.

In another effort to charge Sortino with faulty inspection the Bureau argues that Sortino committed fraudulent record keeping and thus that conduct can constitute a faulty inspection. The trial court reasoned that since faulty record keeping is itself a violation of the Vehicle Code, 75 Pa. C. S. §4731,[5] the Bureau was precluded from taking action for violation of the more general offense of faulty inspection on the same evidence. At the time relevant to this appeal, Section 175.221(1) of the Code listed the violations which were considered sufficient cause for the suspension of all inspection station privileges. "Fraudulent record keeping" and "faulty inspection" were listed as two separate violations under Section 175.221(1).

The provisions of the Statutory Construction Act apply to regulations such as Section 175.221(1), and are thus applicable in construing the law in this case. Statutory Construction Act of 1972, 1 Pa. C. S. §1502 (a)(1)(ii).

It is a well established rule of construction that a law must be construed, if possible, to give effect to all of its provisions so that all words and phrases have meaning, and so that none are treated as surplusage. *Lukus v. Westinghouse Electric Corp.*, 276 Pa. Superior Ct. 232, 419 A.2d 431 (1980); *Pennsylvania Insurance Department v. Adrid*, 24 Pa. Commonwealth Ct. 270, 355 A.2d 597 (1976). If we were to accept the Bureau's argument that "fraudulent record keeping" in and of itself constitutes a violation of "faulty inspection" there would be no reason to have a separate

---

[5] Section 4731 states:

A record shall be made of every inspection and every certificate issued and the record shall be forwarded to the Department in the manner and at the time the Department shall specify by regulation.

violation for "fraudulent record keeping" and those words in Section 175.221(1) enumerating specific violations and their penalties would be rendered meaningless. We cannot accept such an interpretation.

The Bureau relies on *Bureau of Traffic Safety v. Stafford*, 28 Pa. Commonwealth Ct. 157, 367 A.2d 816 (1977), for the proposition that record keeping violations themselves constitute "faulty inspections." We find that case to be distinguishable from the one presently before us.

In *Stafford* the unlawful furnishing of inspection stickers constituted a "faulty inspection" and the Court found that the recording violation, that is the Employer's actions of allowing a non-certified mechanic to sign the inspection forms, encouraged these "faulty inspections," and therefore the issuance of inspection stickers unlawfully. Under prior law the inspection mechanic was required to record the information on the inspection record himself. *See* 3 Pa. B. 2866 (1973). At the time this case arose, however, Section 175.202(b) (now Section 175.42(b)(1)) allowed someone other than the mechanic to record the inspection information from work sheets, the procedure used by Sortino. Furthermore, as noted in note 3 of *Stafford*, 367 A.2d at 818, 28 Pa. Commonwealth at 161, there were no provisions under the law, as it existed at that time, which specifically delineated what constituted a violation and what type of penalty should be imposed, as there was under Section 175.221 (1) (now §175.51(a)), at the time relevant to this appeal. Consequently, Section 819(f) of the prior law, Act of April 29, 1959, P.L. 58, *as amended*, formerly 75 P.S. §819(f), repealed by the Act of June 17, 1976, P.L. 162, was a "catch all" section in the sense that, when a violation such as a record keeping violation occurred, the holder of an inspection certificate was charged with violating Section 819(f) which prohib-

ited "improper and unlawful inspections," because there were no regulations promulgated at that time making record keeping violations a separate chargeable offense in and of themselves.

The Bureau next argues that the trial court erred in finding that the omissions on the inspection records were not "fraudulent record keeping" but rather "careless record keeping." The Bureau contends that since Sortino's secretary did not fill in all of the appropriate blanks on the record that there was concealment and therefore fraud. This issue is largely an issue of fact which has been determined by the trial court in Sortino's favor and we find no basis upon which to reverse the trial court's finding.

As noted earlier, Section 175.202(b) of the Code provided that someone other than the certified mechanic who performed the inspection may enter the required information onto the inspection form. While the regulation requires the mechanic to sign the appropriate forms immediately after he has performed the inspection, there is no similar provision regarding the time when someone other than the mechanic must record the necessary information on the official forms.

Sortino testified that his secretary was in the act of logging the notations on his inspection work sheets at the time the record books were seized by the Trooper and was thus unable to complete the recording. The trial court found that Sortino's actions under these facts, creating such a delay in the recording process, could be considered careless but not fraudulent. Since fraud involves an element of deceit, *See* Black's Law Dictionary 594 (5th ed. 1979), proof of which is absent here, we must agree with the trial court that the Bureau has not sustained the charge of fraudulent record keeping.

Review by the Commonwealth Court of trial court adjudications in inspection certificate suspension cases is limited to a determination of whether there has been an error of law or whether the findings of the trial court can be supported by substantial evidence and may not determine questions of credibility. *Commonwealth v. Walker Pontiac, Inc.*, 488 Pa. 575, 413 A.2d 375 (1980). We find no such errors, nor do we find a lack of substantial evidence to support the trial court's findings here.

Lastly, the Bureau contends that the trial court erred by imposing concurrent penalties for 28 record keeping violations when the Department had exercised its discretion to impose these penalties consecutively.[6] The trial court was of the opinion that since it found that there were no facts which would prove deception and hence fraud, it had found facts different from the Bureau and could, therefore, properly revise the penalty. *Commonwealth v. Kobaly*, 477 Pa. 525, 384 A.2d 1213 (1978). The Bureau argues that our decision in *Commonwealth v. Antram*, 48 Pa. Commonwealth Ct. 135, 136, 409 A.2d 492, 493 (1979) limits *Kobaly* to correcting the period of revocation. We find no such limiting language in either *Kobaly* or *Antram*. *Kobaly* authorizes the trial court to "alter the penalty" where it finds facts different from the Bureau. In the instant case, the trial court did just that. The fact that the Bureau's regulations reserved to itself the discretion to determine whether the suspension periods authorized shall be consecutive or concurrent does not detract from the trial court's authority in this case to alter the penalty from what is

---

[6] At the time relevant to this appeal Section 1715.221(4) (now §175.51(d)) of the Code provided:

In the case of multiple violations considered at one time, the Department may, in its discretion, direct that any suspension imposed under the schedule be served concurrently.

tantamount to a lifetime suspension to a period of one year, which to us seems ample under the circumstances.

Order affirmed.

### ORDER

It is ordered that the order of the Court of Common Pleas of Northampton County, numbered 1980-C-10640 and dated January 18, 1982, is hereby affirmed.