## In the Matter of the Appeal of John W. Pryor

*William A. Kuhar Jr., assistant counsel,* for the commonwealth.
*William E. Hager III,* for appellant.

ALEXANDER, *P.J.,* January 25, 1990 — John W. Pryor has appealed to this court pursuant to section 4724(b) of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. §4724(b), from a suspension imposed by the Commonwealth of Pennsylvania, Department of Transportation of his certificate of appointment of official inspection station and privilege to inspect motor vehicles. After hearing this court finds that the two-month suspension imposed by DOT was improper and that the licensee should have been issued a warning.

## Statement of the Issue

The issue in this case is: May DOT impose a two-month suspension for a licensee's first violation of its Vehicle Equipment and Inspection Regulations[1] when the licensee's culpability is no greater than careless?

## Findings of Fact

Licensee is the owner and operator of a business in Rimersburg Borough, Clarion County, Pennsylvania, known as Eshbaugh's Repair Shop, which business holds a certificate of appointment to operate an official inspection station. Licensee has

---

1. 67 Pa. Code §175.51.

worked in the business for 23 years and is familiar with the history of the business since his grandfather started it in 1953. To licensee's knowledge the business has never had a violation concerning the operation of their inspection station.

On November 26, 1988, licensee personally inspected a trailer and recorded the pertinent data concerning that inspection on a form supplied by DOT known as an Inspection Record.

The inspection stickers used by a certified station are supplied by DOT and are in packages of 10. Licensee had only used two stickers from the package of 10, but the regulations required that he open a new package of 10 and begin using the new stickers with the first one to be used for the November 26, 1988, inspection. Licensee in fact took a new sticker from the new package of 10 and placed that sticker on the trailer which was inspected.

When licensee recorded the information concerning the inspection on the Inspection Record, however, he listed the certificate of inspection serial number for the third sticker in the older package instead of the first sticker in the new package. This error occurred because the trailer being inspected was the same trailer which had been inspected by licensee on July 24, 1988, and November 26, 1988.

The information, therefore, for the July 24, 1988, inspection and the November 26, 1988, inspection was identical with the exception of the serial number of the sticker. Licensee inadvertently added one number to a 10-digit number indicating that the serial number of the sticker was the third sticker in the older package when in fact the first sticker of the newer package had been placed on the truck.

Five days later on December 1, 1988, licensee inspected another trailer and when he examined

the inspection stickers he realized that he had made the error on November 26, 1988. He realized at that time that he had to start a new Inspection Record, which is a single-page document supplied by DOT. All that was required to start the new Inspection Record was to transpose the third and final entry on the previous Inspection Record onto the new record as the initial entry and to insert the data from the December 1, 1988, inspection, which data was already set forth on a work order prepared by licensee.

Neither licensee, nor anybody else associated with licensee's business, inspected a trailer between December 1, 1988, and April 4, 1989, when Trooper Thomas Chelgren, of the Pennsylvania State Police, came to licensee's place of business for the purpose of performing a routine audit of the inspection records. Had licensee inspected a trailer subsequent to December 1, 1988, and prior to April 4, 1989, he would have started a new Inspection Record by transposing the information from the old record and recording the data from the work order of December 1. He had intended to do this when he discovered his error, but had forgotten the problem and had had no reason to be reminded of it since no subsequent inspections were performed.

When the error was discovered during the April 4, 1989, audit, the new Inspection Record sheet was begun properly and the third and last item on the old Inspection Record was deleted by drawing a pencil line through that item. Both of these corrections were marked as "okay" and dated by Trooper Chelgren. Trooper Chelgren reported "incorrect entries" by licensee and DOT imposed a two-month suspension of licensee's certificate of appointment for his violation of the regulations.

## Discussion of Law and Analysis

When the error was made by licensee in his records, the regulations provided:

### "Duration of Suspension"

| Type of Violation | First Violation | Second Violation | Third and Subsequent Violation |
|---|---|---|---|
| (2) Category 2 | | | |
| (i) Fraudulent record keeping | 1 year | Permanent | |
| (ii) Improper record keeping | 2 months | 1 year | 3 years |
| (viii) Careless record keeping | Warning | 4 months | 6 months |

67 Pa. Code §175.51.

In addition to the general categories of "fraudulent record keeping," "improper record keeping" and "careless record keeping," the regulations provide specific subcategories which describe the exact conduct which is unlawful (such as failure to affix a certificate of inspection immediately upon successful completion of the inspection[2]), but there has been no suggestions by DOT that licensee violated any of these specific subcategories.

It is the contention of DOT that licensee was guilty of improper record keeping, mandating a two-month suspension. Licensee contends that his conduct was merely careless which would permit DOT to suspend his certificate only after one warning was given.

Trooper Chelgren testified that there was no evidence that licensee had acted fraudulently or had the intent to deceive anybody when he made the

2. See 67 Pa. Code §175.51(a)(2)(iv).

mistake which he made, and DOT has not contended that licensee acted fraudulently.

DOT, however, made no finding concerning whether or not licensee had been careless in his record keeping, as that category was ignored by DOT.

Prior to October 4, 1983, there were only two general specifications of unlawful record keeping — fraudulent record keeping and careless record keeping.[3] On that date the regulations were amended to include the offense of improper record keeping.

DOT contends that the present case is controlled by the opinion of the Commonwealth Court in *Department of Transportation v. Cappo,* 106 Pa. Commw. 481, 527 A.2d 190 (1987). In the *Cappo* case the Commonwealth Court reversed the trial court's finding that, since no fraud or intent to deceive were proven, DOT could only find that the licensee in that case was guilty of careless record keeping.

The trial court in *Cappo* had relied upon *Department of Transportation v. Sortino,* 75 Pa. Commw. 541, 462 A.2d 925 (1983). The violation in the *Sortino* case was prior to October 4, 1983, when there were only two categories to consider, either fraudulent record keeping or careless record keeping. The trial court in *Cappo,* therefore, misplaced its reliance upon *Sortino* because it was still necessary for it to determine whether the conduct was improper or careless when fraud was negated because the third category of improper record keeping

---

3. See *Department of Transportation, Bureau of Driver Licensing v. Cappo,* 106 Pa. Commw. 481, 527 A.2d 190 (1987) at footnote 3.

had been added to the regulations since the violation in *Sortino*.

The court in *Cappo* explained the misuse of *Sortino* by the trial court and went on to discuss the terms "improper" and "careless":

"While the terms 'improper' and 'careless' are not defined by statute, by DOT regulations, or by case law, it is clear that these violations do not include elements of fraud or deceit, for these latter are elements of the separate charge of fraudulent record keeping. *Sortino*. And, the charge of fraudulent record keeping would be mere surplusage if improper and careless record keeping involved the same elements. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. §1921(a) (statutes shall be construed, if possible, to give effect to all provisions). We must, therefore, construe these terms according to their common and approved usage. Section 1903 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1903. 'Improper' is defined as 'not accordant with fact, truth, or right procedure,' i.e., incorrect, inaccurate. Webster's Third New International Dictionary 1137 (1966). 'Careless' is defined as 'not taking ordinary or proper care,' i.e., neglectful, inattentive. Webster's Third New International Dictionary 339 (1966). Inasmuch as fraud and deceit are elements of fraudulent record keeping, rather than of improper or careless record keeping, necessary factual findings are required, but are missing here, as to whether or not the appellee's conduct satisfied the elements necessary for a conclusion of 'careless,' as opposed to 'improper,' record keeping. See *Sortino*." *Cappo, supra.*

The *Cappo* case, therefore, does not demand the result which is urged upon this court by DOT, but only acknowledges that the trial court in that case

as well as this court in the present case must determine whether the conduct was "careless" or "improper."

When DOT added the "improper record keeping" category in 1983, it inserted an orange between two apples. The terms "fraudulent record keeping" and "careless record keeping" describe the culpability of the licensee. The term "improper record keeping" tells us nothing about the culpability of the licensee.

"Improper record keeping," as that term was defined in the *Cappo* case as meaning incorrect and inaccurate, describes both fraudulent record keeping and careless record keeping, since both fraudulently kept records and carelessly kept records are records which are incorrect and inaccurate.

It is a reasonable assumption that DOT inserted the "improper record keeping" category between the careless and fraudulent categories because it realized that there was culpability which would fall short of fraud but rise above careless. The "improper record keeping" category can only be a residual category to apply to conduct falling within the hiatus between the fraudulent act and the careless act. This residual category would, therefore, include culpability such as intentionally keeping incorrect records but without a fraudulent intent and recklessly keeping incorrect records when the licensee's conduct involved a gross deviation from the reasonable person standard but was unintentional.

If the "improper record keeping" category is not limited to this residual application, its insertion into the regulations will completely eliminate the other two categories, since fraudulent record keeping and careless record keeping are both improper record keeping. See section 1921(a) of the Statutory Con-

struction Act of 1972, 1 Pa.C.S. §1921(a) (statutes shall be construed, if possible, to give effect to all provisions).[4]

In applying this rationale to the present case, we must first determine if the licensee kept his records in conformance with the regulations. It is this court's finding that the licensee's records were not kept in exact conformity to the regulations and, therefore, the licensee's degree of culpability must be determined.

Since it is conceded by DOT that licensee was not fraudulent, we must determine whether or not licensee's conduct was careless. If this court were to find that licensee's conduct, which produced the records which did not conform to the regulations, was neither fraudulent nor careless, that conduct would be properly characterized as "improper record keeping" within the meaning of the regulations.

This court, however, finds that licensee's conduct was nothing more than careless. In fact, when an explanation of how the mistake took place is examined, it is the finding of this court that licensee's conduct constitutes only the slightest degree of carelessness.

There is no evidence that licensee intended to keep his Inspection Records in a manner which did not conform to the regulations, nor is there any evidence that his conduct was reckless. If "careless record keeping" does not properly describe the

4. If the regulations are interpreted to limit the "improper record keeping" category to this residual application the issue of whether or not the regulations are unconstitutionally vague or overbroad is avoided. See *Arnett v. Kennedy,* 416 U.S. 134, 40 L.Ed. 2d 15, 94 S.Ct. 1633 (1974), and annotation, *Supreme's Court Application of Vagueness Doctrine to Non-Criminal Statutes or Ordinances,* 40 L.Ed. 2d 823.

conduct of the licensee in this case, that category would be virtually eliminated from the regulations.

There is no indication that DOT intended to eliminate the "careless record keeping" category in 1983. DOT, however, completely ignored the "careless record keeping" category in this case when it imposed the two-month suspension of licensee's certificate.

This court may modify the penalty imposed by DOT when it makes new findings of fact and new conclusions of law, as has been done in this case. See *Department of Transportation, Bureau of Driver Licensing v. Cappo,* 106 Pa. Commw. 481, 527 A.2d 190 (1987); *Kenworth Trucks Philadelphia, Inc. v. Department of Transportation, Bureau of Traffic Safety,* 56 Pa. Commw. 352, 425 A.2d 49 (1981).

The appropriate penalty in this case is a warning for careless record keeping, which warning is not a meaningless slap on the wrist in view of the cumulative effect of such a violation, causing a second offense to mandate a four-month suspension and third and subsequent offenses to mandate six-month suspensions.

Hence this

## ORDER

And now, January 25, 1990, for the reasons set forth in the foregoing opinion, the appeal of John W. Pryor is sustained and the suspension of his certificate of appointment of official inspection station and privilege to inspect motor vehicles is set aside and the Pennsylvania Department of Transportation is instructed to issue a warning to John W. Pryor for his first violation for careless record keeping pursuant to regulation 175.51(a)(2)(viii).