# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Commonwealth of Pennsylvania, | : |
| Department of Transportation | : |
| | : |
| v. | : No. 1410 C.D. 2015 |
| | : Submitted: May 5, 2017 |
| Northeast Community, | : |
| Appellant | : |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                  FILED: August 16, 2017

Northeast Community (Northeast) appeals from the Order of the Court of Common Pleas of Philadelphia County (trial court), affirming the September 24, 2014 Decision of the Commonwealth of Pennsylvania, Department of Transportation (Department), imposing a permanent suspension of Northeast's Certificate of Appointment as an Official Emission Inspection Station and a $10,000.00 fine for second offenses of furnishing emission certificates of inspection without conducting emission inspections and fraudulent recordkeeping. Northeast contends the trial court erred in finding that the Department met its burden of proof and that the offenses in question constitute second offenses. Because we find no error in the trial court's determinations, we affirm.

Northeast is an automobile repair and vehicle inspection station located at 6101 Roosevelt Boulevard in Philadelphia. On September 24, 2014, the

Department issued an Official Notice (September Notice), permanently suspending Northeast's Certificate of Appointment as an Official Emission Inspection Station and imposing a fine of $10,000.00 for furnishing emission certificates of inspection without conducting emission inspections and fraudulent recordkeeping, second offenses. (R.R. at 184a.) Northeast appealed the suspension to the trial court.[1]

The trial court held a hearing[2] on this matter on June 17, 2015, where the Department called Quality Assurance Officer Jay Hawkins (Hawkins) as a witness.[3] Hawkins is employed by Parsons Corporation, which contracts with the Department to perform investigations and audits of safety and emission inspection stations. Hawkins testified that he conducted an investigation of Northeast on June 4, 2014, after noticing some record anomalies from the emission tests being conducted by Northeast.[4] He explained that the vehicle information database (VID)[5] revealed that the same power control module identification number (PCM ID)[6] and parameter identification number (PID)[7] combinations were showing up

---

[1] Supersedeas was denied for the suspension imposed by the September Notice. (R.R. at 20a.)

[2] The trial court's hearing addressed multiple appeals filed by Northeast that were consolidated. Other witnesses were called, but their testimony was in relation to appeals from other notices that are not presently before this Court. Northeast has separately appealed to this Court from notices dated April 29, 2014 (April Notice), and May 29, 2014 (May Notice), imposing two one-year suspensions of Northeast's Certificate of Appointment as an Official Emission Inspection Station and two $2,500.00 fines for first offenses of furnishing a certificate of inspection without performing an inspection and fraudulent recordkeeping, which is before the Court in *Department of Transportation v. Northeast Community* (Pa. Cmwlth., No. 1409 C.D. 2015, filed Aug. 16, 2017). The May Notice involved the first offenses of these violations.

[3] Hawkins's testimony is found at pages 141a-175a of the Reproduced Record.

[4] Hawkins was there to examine "stickers, records, pools, [and] equipment" to determine "whether it's functioning properly," as well as investigate the reported anomaly. (R.R. at 147a.)

[5] The VID consists of "a population of every emissions test that is produced in the Commonwealth of Pennsylvania from each and every stations analyzer." (R.R. at 144a.)

[6] The PCM is the internal vehicle computer that runs the vehicle's emissions equipment.

repeatedly in the tests performed by Northeast.[8] He testified that, similar to a vehicle identification number (VIN) number, each computer is different for each vehicle. He added that the PCM ID and the PID together are similar to DNA. He stated that Northeast has "access to their [sic] records from their analyzer" and that both Parsons and the Department can also access the same VID records. (R.R. at 145a.)

Hawkins began his investigation by having a mechanic[9] test a 1999 Isuzu Rodeo and a 2008 Toyota Scion in order to determine that the equipment was functioning properly. The results for the Isuzu Rodeo revealed that the on-board computer (OBD) VIN[10] number did not automatically show up on the report. Hawkins testified that this is normal because "[a]ll vehicles produced before 2005 were not required to produce a [OBD] VIN. All vehicles after 2005 were required to produce a [OBD] VIN when hooked up to the emission analyzer." (*Id.* at 148a.) The OBD VIN was displayed automatically on the results for the Toyota Scion because the vehicle was manufactured after 2005. These tests were not conducted to determine the passing or failing of emission tests, but were intended to ensure that the analyzer was working correctly. These tests revealed that Northeast's equipment was calibrated correctly, and the test was administered properly.

---

**(continued…)**

[7] The PID count "is the actual number of that computer in each vehicle that controls the emissions components." (R.R. at 145a.)

[8] Hawkins testified that both of these numbers "can go from zero to ninety-nine. . . . And they can also have alpha digits mixed into it." (R.R. at 159a.)

[9] The mechanic was identified as Joselito Galarza, identification number 27-112-163.

[10] The OBD VIN is "read from the onboard computer from the analyzer on 2005 and newer vehicles." (R.R. at 156a.)

Hawkins completed his investigation by conducting a questionnaire and writing a report on the infractions he thought had occurred.

Hawkins testified that he reached his conclusions based on a monthly record audit. This report revealed that between July 25, 2013, and April 11, 2014, 1,578 emission tests were administered by Northeast. Of those 1,578 tests, 562 were performed on vehicles manufactured after 2005, the OBD VIN numbers were blank, and each of the vehicles had PCM IDs of 10 and PID counts of 15. Hawkins explained that, in order for all of these results to be the same, Northeast must be testing the same vehicle repeatedly while manually inputting different VIN numbers, a process known as "clean screening." Hawkins testified that this is a problem because "the vehicles that were obtaining these stickers were not tested properly. They weren't tested at all." (*Id.* at 162a.) Thus, he stated that the "[s]tickers were issued fraudulently." (*Id.* at 174a.)

Following cross-examination, in which he acknowledged that some vehicles would have the same PCM ID and PID count numbers, Hawkins clarified on redirect that those cars would be "sister related," such as two BMWs. (*Id.* at 171a.) If manufactured after 2005, he explained that the vehicles certainly would report different OBD VINs when being tested. Hawkins stated that the combination of absent OBD VINs and repeated PCM IDs and PID counts on the 562 emission tests constituted the basis for his conclusion that these were fraudulent tests. He further explained that, when he gave Northeast's owner and the technicians involved a questionnaire to respond to, the station owner and his technicians who

4

performed the 562 tests[11] claimed that they were being done correctly and that no wrongdoing had occurred.

The trial court credited Hawkins's testimony. The trial court sustained the Department's September Notice, permanently suspending Northeast's Certificate of Appointment as an Official Emission Inspection Station and levying the fines.[12]

Northeast now appeals the trial court's Order, asserting that the trial court erred in finding that: (1) the Department met its burden in proving that Northeast furnished certificates of inspection without performing an inspection and committed fraudulent recordkeeping; and (2) the violations contained in the September Notice constitute second offenses where the Department failed to meet its burden of proving that first offenses had occurred. These questions are before this Court for review.[13] In performing this review, we are cognizant that the Vehicle Code imposes an obligation on the Department to supervise vehicle inspection stations and perform inspections thereof and authorizes it to impose various penalties for violations of the Vehicle Code or the Department's regulations that are found during these inspections. Section 4724(a) of the Vehicle Code, 75 Pa. C.S. § 4724(a).

---

[11] Of the technicians, Jose Tavares, operator # 25-869-048, performed 97 tests; Joselito Galarza, operator # 27-112-163, performed 192 tests; and Jonas Amancio, operator # 26-663-138, performed 273 tests.

[12] The trial court issued a single opinion that addressed Northeast's appeals of both the May Notice and the September Notice.

[13] "Our scope of review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010) (citing *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003)).

# I

Northeast contends that the trial court erred in finding that the Department met its burden in proving that Northeast furnished a certificate of inspection without inspection and committed fraudulent recordkeeping. Section 4724(a) of the Vehicle Code provides, in relevant part:

> The department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station, which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department. A schedule of all penalties, points and suspension may be established by the department by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the department. The department shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the department.

75 Pa. C.S. § 4724(a). Under the relevant law, "[a] person may not: . . . (3) Furnish, loan, give or sell certificates of emission inspection and approval to any official emission inspection station or other person except upon an emission inspection performed in accordance with this chapter." 67 Pa. Code § 177.427(3). Fraudulent recordkeeping is defined as follows:

> *Fraudulent recordkeeping*--A recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals one or more of the following:
>
> (i) That a certificate of inspection was issued without compliance with the required inspection procedure.
> (ii) The number of inspections performed.
> (iii) The individuals or station that performed the inspection.

67 Pa. Code § 177.601. When violations of the Vehicle Code and associated regulations are alleged, the Department bears the burden of proving the violations by a preponderance of the evidence, "i.e., that it is more likely tha[n] not" that the violations occurred. *Tropeck v. Dep't of Transp., Bureau of Motor Vehicles*, 847 A.2d 208, 212 (Pa. Cmwlth. 2004); *Kot v. Dep't of Transp.*, 562 A.2d 1019, 1020 (Pa. Cmwlth. 1989).

Northeast argues that the trial court erred in crediting Hawkins's testimony because he initially stated that the PCM IDs and PID counts are the DNA of a vehicle and provide a "unique" combination of numbers for each vehicle, (R.R. at 153a), but conceded on cross-examination that other vehicles could have the same PCM ID and PID count combinations, including, as evidenced in Exhibit C-5, vehicles in Northeast's garage. Northeast argues that if the trial court intended to credit all of Hawkins's testimony, that testimony is inconsistent. Northeast further asserts that there was no testimony concerning fraudulent recordkeeping and that the relevant law refers to records kept by the station rather than records entered into the VID. For these reasons, Northeast argues that the Department failed to meet its burden of proof.

The Department contends that Hawkins's testimony is not contradictory because he testified that the 562 test results were fraudulent based on the absence of the OBD VIN for the vehicles manufactured after 2005, as well as the identical PCM IDs and PID counts. Therefore, the Department argues that the trial court could reasonably infer from Hawkins's credited testimony that the violations occurred. The Department asserts that it is not required to provide evidence that excluded all other possible interpretations in order for the evidence to meet its burden of proof.

7

In performing our review, we may examine the trial court's findings to determine if they are supported by substantial, competent evidence. *Riley v. Dep't of Transp.*, *Bureau of Driver Licensing*, 946 A.2d 1115, 1119 n.1 (Pa. Cmwlth. 2008).[14] "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Keslosky v. Old Forge Civil Serv. Comm'n*, 73 A.3d 665, 671 (Pa. Cmwlth. 2013) (citing *Agostino v. Twp. of Collier*, 968 A.2d 258, 269 (Pa. Cmwlth. 2009)). Questions regarding the weight of the evidence and witness credibility rest "solely within the province of the trial court." *Castagna v. Commonwealth*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003). Accordingly, the trial court, as fact-finder, may "accept or reject any testimony in whole or in part . . . ." *DiCola v. Dep't of Transp., Bureau of Driver Licensing*, 694 A.2d 398, 400 (Pa. Cmwlth. 1997). Provided the evidence in the record is "adequate to support the finding found by the trial court, as fact[-]finder, we are precluded from overturning that finding and must affirm . . . ." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). This Court must review all evidence in the record "in the light most favorable to the party that prevailed before the trial court." *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998).

---

[14] This Court has previously stated the following:

It is irrelevant whether the record contains evidence to support findings other than those made by the fact[-]finder; the critical inquiry is whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Comp[.] Appeal B[d.] (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). If there is, an appellate court may not disturb the findings. *Gen[.] Elec[.] Co[.] v. Workers' Comp[.] Appeal B[d.] (Myers)*, . . . 849 A.2d 1166, 1171 ([Pa.] 2004).

*Keslosky v. Old Forge Civil Serv. Comm'n*, 73 A.3d 665, 671 (Pa. Cmwlth. 2013).

The trial court specifically credited Hawkins's testimony, and that testimony is not contradictory. Rather, Hawkins explained that the matching PCM ID and PID counts **together** with the absence of an OBD VIN on vehicles manufactured after 2005 indicate that a vehicle other than the vehicle purportedly being tested was used for the emission tests. Hawkins testified that there were 562 tests recorded in this manner. If the same vehicle was used for all 562 tests, then each of the vehicles that received stickers for those tests were not actually tested. (R.R. at 162a.) Therefore, Northeast "[f]urnish[ed] . . . certificates of emission inspection and approval [without performing] an emission inspection . . . ." 67 Pa. Code § 177.427(3).

Next, while the Department's regulations do not contain a definition of "fraudulent," this Court has previously determined that fraudulent conduct "occurs when an entry in the record . . . is false, entered intentionally and with the purpose of deceiving." *Firestone Tire and Serv. Ctr., O.I.S. No. 798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005) (quoting *Fiore Auto Serv. v. Dep't of Transp., Bureau of Motor Vehicles*, 735 A.2d 734, 737 (Pa. Cmwlth. 1998)). Any "declaration[s], artifice[s,] or practices designed . . . to mislead anyone inspecting the record into believing that the record was facially correct" and that a proper inspection had occurred are inherently deceitful. *Dep't of Transp., Bureau of Driver Licensing v. Midas Muffler Shop*, 529 A.2d 91, 93 (Pa. Cmwlth. 1987). Determining whether circumstances constitute fraud is "largely an issue of fact" to be determined by the trial court. *Dep't of Transp. v. Sortino*, 462 A.2d 925, 927 (Pa. Cmwlth. 1983).

The credited testimony supports that Northeast entered the first vehicle's information into its computer and then performed these tests on a second vehicle,

9

thereby uploading the results of these falsified tests into the VID, which maintains a record of all tests performed in the Commonwealth. The VID is accessible by both Northeast and the Department. Upon intentionally entering false information to perform these tests, Northeast made "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifie[d] or conceal[ed] . . . [t]hat a certificate of inspection was issued without compliance with the required inspection procedure," thus engaging in fraudulent recordkeeping. 67 Pa. Code § 177.601. Therefore, the Department met its burden in proving both that Northeast furnished emission certificates of inspection without actually conducting inspections and engaged in fraudulent recordkeeping.

Northeast alternatively argues that the trial court was free to modify the penalty imposed, and the charge should have been reduced to careless recordkeeping, noting that the trial court itself used "careless" in its opinion.[15] (Northeast's Br. at 14 (citing Trial Ct. Op. at 9).) A trial court may "alter the penalty if, in the trial de novo, it makes findings of facts and conclusions of law different from that of the [Department]." *Dep't of Transp., Bureau of Traffic Safety v. Kobaly*, 384 A.2d 1213, 1215 (Pa. 1978). This is not the case here. In situations where the trial court reaches the same conclusions as the Department,

> [t]he court may not . . . do more than (1) affirm the [Department's] penalty because the law as applied to the facts heard de novo leads to a conclusion of a violation of the law or (2) reverse the [Department's] penalty because the law as applied to the facts heard de novo does not lead to a conclusion of a violation of law.

---

[15] Careless recordkeeping is defined as "[f]ailure to sign the emission inspection test report, missing or omitting required documentation supporting the issuance of a waiver as required by § 177.281 (relating to issuance of waiver) or data entry errors proven to have no influence on the outcome of the inspection." 67 Pa. Code § 177.601.

10

*Dep't of Transp., Bureau of Traffic Safety v. Cormas*, 377 A.2d 1048, 1050 (Pa. Cmwlth. 1977). Even if the trial court was free to change the penalty, there is nothing requiring that it do so. Notwithstanding the use of the word "careless" in its opinion, the trial court found that Northeast "had committed the violation of **fraudulent** recordkeeping . . . ." (Trial Ct. Op. at 5 (emphasis added).) Accordingly, any argument that the trial court could change the penalty issued is unpersuasive under these circumstances.

## II

Northeast argues that the violations from the September Notice should not constitute second offenses[16] because the Department failed to meet its burden of proof that first offenses for furnishing an emission certificate of inspection without conducting an emission inspection and fraudulent recordkeeping had occurred. However, this Court has affirmed the order of the trial court determining that the Department met its burden of proof related to its May 29, 2014 Notice suspending Northeast's Certificate of Appointment as an Official Emission Inspection Station and imposing fines for these violations in *Department of Transportation v. Northeast Community* (Pa. Cmwlth., No. 1409 C.D. 2015, filed Aug. 16, 2017), which constitutes its first offenses of the violations; therefore, the Department has met its burden. Accordingly, the trial court did not err in finding that the violations referenced in the September Notice both constitute second offenses.

---

[16] Second offenses for both furnishing a certificate of inspection without performing an actual inspection and fraudulent recordkeeping both carry a penalty of a permanent suspension and a $5,000.00 fine. 67 Pa. Code § 177.602(ii)-(iii). First offenses for both violations carry a penalty of a one-year suspension and a $2,500.00 fine. *Id.*

For the aforementioned reasons, we affirm the Order of the trial court.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Transportation :
 :
 :
   v. : No. 1410 C.D. 2015
 :
Northeast Community, :
     Appellant :

## **O R D E R**

 **NOW**, August 16, 2017, the Order of the Court of Common Pleas of Philadelphia County, entered in the above-captioned matter, is hereby **AFFIRMED**.

            _____

            **RENÉE COHN JUBELIRER,** Judge