## CORNELIUS v. MOLLOY.

A. sold to B. a quantity of metal as copper, which A. knew not to be copper, but a composition. A. is liable for the deceit in concealing his knowledge from B., who purchased on the representations of A., and was thereby deceived.

Whether a *narr.* sets out no cause of action, or a good cause insufficiently averred, is the test of sufficiency after verdict.

The fact that an article sold was inspected by the purchaser will not avoid the liability of the vendor, if it be a different thing from that sold, if its true character could not be ascertained by mere inspection.—Per Bell, J.

Concealment of knowledge that the article sold was not in fact what it appeared to be, or of such circumstances as would induce a purchaser to test the article before buying, is an undue concealment for which the seller is liable in case for the deceit.— Per Kennedy and Bell, Js.

CERTIFICATE from the Nisi Prius.

*Jan.* 17, 18. This was an action on the case to recover damages for a fraud, in selling a composition metal as copper. The first count averred that the plaintiffs, at the instance of the defendant, bargained for a quantity of copper at a certain price; that defendant, intending to defraud the plaintiffs, fraudulently delivered to them as copper, so bargained for, a certain composition metal, whereas, in truth, the metal so delivered was not copper; and this

2 B 2

the defendant knew; and so the defendant defrauded the plaintiffs in such sale, whereby they lost the benefit of such sale. The second count averred the bargain for copper for so much as it was worth, and that defendant, *knowing said copper* not to be copper, so agreed to be bought, but composition metal, sold and delivered it as copper, and thereby deceived and defrauded the plaintiffs.

On the trial, before KENNEDY, J., it appeared that the agent for the plaintiffs called on the defendant, and inquired if he had any old copper to sell; he said he had. They looked at it in the storehouse, and the agent, thinking it to be good copper from its appearance, went to consult the plaintiffs, after learning the price was eighteen cents per pound. · On his return he agreed to take it. It was then weighed, the bill signed by the agent, and the goods delivered at the factory, stored, and paid for. Two days after, wanting some copper, the agent took some of this; but on heating and striking it, it was found not to be copper, and unsuited for the purposes of the plaintiffs. Notice was then given to the defendant, but he declined to receive it back; saying he had bought it for good copper. It was also shown that, shortly before this occurrence, the defendant had sold part of the same goods to a gas fitter, who returned it as not being copper, and received other copper in exchange. The metal was in fact French sheathing copper, sold at auction on account of underwriters. At the auction where the defendant purchased, there was a question made, whether it was composition, but the captain of the vessel said they knew no other article than copper, and it must be sold as such, to avoid difficulties with the underwriters; and it was sold as copper without any warranty, and with the caution that buyers were to depend on their own inspection. The actual value was twelve and and a half cents per pound, but the auction price was seventeen cents.

The defendant proved that the plaintiffs' agent was present during the weighing, which took an hour and a half, and had every opportunity to inspect it. His son said, that when the agent came to buy it, the defendant said, "There it is; judge for yourself; I sell it as I bought it." He further gave evidence that the article was a new one in the market, and known as French copper. That in France, from whence it came, it was known as copper; all compounds of that metal being there known by that name. There was some other evidence that the article, when in sheets, was known in the market as sheathing copper, and a good deal that it was not copper, but an alloy of various metals.

His honour, in his general charge, coupled with his answers to the points submitted—none of which required it to be left to the jury as a question of fact, whether the article was merchantable under the name of copper, told the jury, in substance, that supposing the defendant had said, "judge for yourself," yet if he used it with the intention of being thereby freed from responsibility while he was knowingly practising a deceit, it was a fraud. It was for the jury to inquire as to his intention; whether he induced the purchase knowing it was not copper. On this point his honour referred to the matters which had occurred at the auction, and the subsequent sale and return of the goods, adding, the captain's statement gave no character to the article, it was not known in this market, and had acquired no commercial name; and it being a new article, the rule that if ordinary diligence might have discovered the defect, the seller would not be answerable, did not apply. If, then, he had reason to believe it was not copper, was he not bound to tell the purchaser his reason for such belief? If he designedly omitted this to induce the purchasers to buy, and it was material for them to know, and if known, it would have prevented the purchasers buying, the withholding of the information amounted to a fraud—if not a suggestion of falsehood, at least a suppression of truth for which he was answerable.

That the *narr.* was insufficient, and the charge calculated to mislead the jury, with six particular exceptions to the charge, were assigned for error.

*Fallon* and *Todd,* for plaintiffs in error.—This case goes further than any other; it is founded on a deceit, not by misrepresentation, nor by an industrious concealment of known facts, but in a want of representation of doubts suggested by others. To make a party liable for concealment, it must be an *industrious* concealment. The mere neglect to state facts, which might have prevented the bargain, is not sufficient. There must be an active effort to prevent a discovery. This is not pretended on the evidence, nor is it material under the charge. On this they cited 1 Story's Eq. sect. 212; 2 Stark. Ev. tit. *Deceit;* Dawes *v.* King, 1 Stark. 61; Ashlin *v.* White, 1 Holt, 387; 2 Kent's Com. 479, 1 Wend. 185, 1 Peake, 226. Here, too, there was an express warning by the words, "I sell it as I bought it;" Pickering *v.* Dowson, 4 Taunt. 779; Baglehole *v.* Walters, 3 Camp. 154. Could there be a recovery from the auctioneer, and was there any more information communicated by him? It is clear that the purchase

was made under the belief that it was copper, since but one cent advance was asked on the re-sale.

But the judge clearly misled the jury in not leaving the question to them whether the article was merchantable under the name of copper, which is the test question, however inferior in quality it may be; Salem v. Adams, 23 Pick. 265; Jennings v. Gratz, 3 Rawle, 168.

The *narr.* is entirely defective. The first count lays a fraud in delivering a different article from what we sold him, which is a breach of contract merely. The second lays no fraud, since it expressly avers that what we did deliver was copper.

*J. P. Montgomery* and *D. P. Brown*, contrà.—The jury have decided it was not copper, when they found the defendant sold it knowing it not to be copper. The knowledge and deceit are found by them. The only question, then, is whether a man, knowing the qualities of an article, and selling it as a different article, thereby practising a deceit, is liable. They cited Crawshay v. Thompson, 4 Man. & Gr. 357; Eyre v. Dunsford, 1 East, 318, 3 Barn. & Ad. 114; Pasley v. Freeman, 3 Term Rep. 51; Shepherd v. Kain, 5 Barn. & Ald. 240; Fletcher v. Bowsher, 2 Stark. 561; Jones v. Bright, 5 Bing. 533; Pillorue v. Hood, 5 Bing. N. C. 97; Ridney v. Stoddard, 7 Metc. 252; Spalding v. Hedges, 2 Barr, 240; Martin v. Pennock, Ibid. 379, 1 Peake, 115.

*Feb.* 5. BELL, J.—The defendant invokes the aid of the common-law rule, which, departing from the pure morality enforced by the civil code, ordains that a vendor is not to be held answerable for the quality of his wares, or for any latent defect in them, unless he has made a fraudulent representation, or practised some trick or artifice, in respect to them, whereby the vendee was deceived. It is very true that, generally speaking, a mere omission by a seller to communicate his knowledge of such defects will not bind him to answer for them, though, under peculiar circumstances, even silence will be deemed a fraud. Notwithstanding some contrariety of opinion is to be discovered in the cases, springing from a disposition sometimes entertained to engraft upon the body of the common law the doctrine of the civilians, it is now established, as the general rule, that the foundation of such an action as the present, is the fraud and deceit of the defendant, by active artifice, to the injury of the plaintiff; or, as has been well expressed by an eminent judge, it is the fraud and damage coupled together,

which entitles the party injured to relief in a court of justice: Bacon *v.* Bronson, 7 Johns. Ch. R. 201. Such fraud exists where a party intentionally misrepresents a material fact, or wilfully produces a false impression, in order to mislead another, or to obtain an undue advantage of him; and this misrepresentation may be, as well by arts or artifices, calculated to delude, as by positive assertions: 1 Story's Eq. s. 192; Laidlaw *v.* Organ, 2 Wheat. 195; 1 Dow. Parl. R. 272. Ordinarily, this rule does not comprehend the expression of a false opinion when the parties are dealing irrespective of the particular knowledge possessed by each, because, as it is said, the simulated opinion is presumed not to mislead the other party, who has equal means of information, or, at least, cannot be supposed to rely upon it. But, if the seller falsely represent the quality or character of the commodity to be other than it is in fact, he will be liable to an action for deceit, or may be defeated in a suit brought for the purchase-money, if it appear that the purchaser, not enjoying equal means of knowledge, trusted to such representation. These principles are recognised by many cases. Among them, may be mentioned The Oneida Manufacturing Co. *v.* Lawrence, 4 Cow. 440, where it was held that, if the purchaser has a full opportunity to examine the article, the vendor will not be answerable for any latent defect, unless there be fraud or express warranty, *or such a direct representation as is tantamount to it.* This is in accordance with Dawes *v.* King, 1 Stark. Rep. 61; (2 E. C. L. R. 302;) and Baglehole *v.* Walters, 3 Camp. 154, which decide that, where a deceit is practised for the purpose of putting the party off his guard and preventing him from being as watchful as otherwise he would have been, an action for the deceit may be maintained. This is especially so, where the thing sold is affirmed by the vendor to be in specie, the thing bargained for, when, in truth, it is something in its nature essentially different; and it will matter nothing that the article has been inspected and received by the buyer, if its true character be not easily ascertainable by such means, short of analytical experiment, as only indolence or folly would omit. This doctrine is asserted in Osgood *v.* Lewis, 2 Harris. & Gill, 495, on a question of breach of contract in the sale of summer strained oil for winter sperm oil, the difference between which, in ordinary weather, could not be discovered upon inspection. The principle of this case is thought to be departed from in the subsequent determination, by the same court, of Hyatt *v.* Boyle, 5 Gill. & Johns. 119; but, however this may be, it is certainly in accordance with our own case of Bor-

rekins *v.* Bevan, 3 Rawle, 23, afterwards recognised in Jennings *v.*
Gratz, as settling the rule, in Pennsylvania, that a seller is answer-
able where the article inspected and received by the buyer fails to
correspond, in specie, with the thing as which it was sold.    To the
same effect, and, indeed, going further, is Shepherd *v.* Kain,
5 Barn. & Ald. 240, where a ship was advertised for sale as a
" copper-fastened vessel," but " to be taken with all faults, without
allowance for any defect whatsoever."    The vessel, though par-
tially copper-fastened, was not what is known in the trade as a
copper-fastened vessel.    The buyer had a full opportunity to ex-
amine her before the sale ; yet, in an action on the warranty, it
was ruled he was entitled to damages, for that the words " with all
faults," could only mean all faults to which a copper-fastened ves-
sel may be subject ; but here the vessel was not copper-fastened,
as she was described to be.    Most of these, it is true, were actions
*ex contractu,* arising from a breach of warranty, express or im-
plied.    But the principle they announce is *à fortiori* applicable in
case, as for a deceit which proceeds upon the ground of direct
falsehood and fraud in the defendant, whereby the plaintiff was
misled and damnified.    " A seller," says Mr. Justice Story, in his
luminous treatise on equity jurisprudence, " is unquestionably liable
to an action of deceit, if he fraudulently represent the quality of
the thing sold to be other than it is in some particulars, which the
buyer has not equal means with himself of knowing ; or, if he do
so in such a manner as to induce the buyer to forbear making the
inquiries, which, for his own security and advantage, he would
otherwise have made."    This proposition is also advanced, in sub-
stance, by Chancellor Kent in his Commentaries, vol. 2, 484, 485,
2d ed., and an examination will show it to be the result of all the
cases.

If we apply these principles to the facts proved on the trial of
this cause, little or no hesitancy can be felt in coming to the con-
clusion, that the instructions given to the jury at Nisi Prius were,
in every essential particular, correct.

So far as appears from the record, the case was put upon the
concession that the article sold by the defendant to the plaintiff
was not copper, but a metal used as a substitute for it in sheathing
ships.    Though portions of it may have been copper, yet, as the
testimony established, adulteration, by the admixture of foreign
ingredients, had been so extensive as to destroy any distinctive
character it might have originally possessed.    Subjected to the
test pointed out in Jennings *v.* Gratz, there would seem to be no

pretence for asserting it to be copper in any sense, since it certainly was not merchantable under that designation. But, upon this point, and for the purposes of this decision, it is sufficient to repeat that the idea of its being entitled to the appellation of copper does not appear to have been entertained at the trial. The points submitted by the defendant for the answer of the learned judge who presided, do not assume it to have been so entitled; nor was he ever asked to leave to the jury, as matter of disputed fact, what was the true character of the article in question. The charge proceeds upon the concession that the thing sold was not copper, and, though on the argument the defendant's counsel complained that the judge took the fact from the jury, it is not assigned for error here that he did so. We are then bound to treat the case as it appears to have been treated below, and, in this aspect of it, the first question is, did the defendant make any representation to the plaintiff's agent in reference to the character of the subject proposed to be bought and sold? This admits of but one answer. McGinley swears that, when he called on the defendant, he asked if he had any old copper for sale? To which the defendant replied, he had four thousand pounds, or a little over, and immediately carried the agent to the store where the so-called copper was deposited, and exhibited it as such. To the same effect is the testimony of William Molloy, the defendant's son. Here, then, was a direct affirmation made in the course of the negotiation of a distinctive character of the article offered.

The next question is, did the defendant know, at the time, that this affirmation was false, and did he fraudulently advance it to mislead the plaintiff's agent, and induce him to buy? This was a question of fact for the jury upon all the evidence, which I may say, in.passing, appears to have been abundantly sufficient to establish a *scienter* and fraudulent motive—and was so, fairly, left to them. But in addition to positive misrepresentation, I think, with the judge who tried it, the case presents an instance of undue concealment of material facts, for which a court of equity would grant relief, and affording sufficient foundation for an action in a court of law. I agree that one dealing with another is not, under our system of law, bound in every instance to disclose all the facts within his knowledge which may be material to the interests of that other. But there are cases where a party is under a legal or, at least, an equitable obligation to communicate what is not known to the other party. In these cases, it is said, the latter has a right to be informed not merely *in foro conscienciœ*, but *juris et de jure.*

This is always so, where, from the nature of the subject, there is created a trust or confidence between them which authorizes the ignorant party to act upon the presumption that there is no concealment. A familiar illustration of this rule, most commonly cited by text writers, is of one selling an estate, knowing he had no title to it, or knowing that there are encumbrances on it, of which the vendee is ignorant. The suppression of such a material fact, in respect to which the vendor must know the very purchase implies a trust and confidence that no such defect exists, would avoid the sale, on the ground of fraud: Arnot v. Biscoe, 1 Ves. 95, 96. Another instance is furnished by Pearson v. Morgan, 2 Bro. Ch. R. 390, where a party, when applied to for information by another about to loan money on the faith of a certain sum supposed to be secured upon an estate, misrepresented the fact and concealed the truth. Mr. Justice Buller, in giving judgment, said, "In cases where fraud is a question of fact, it is always considered as a constructive fraud where the party knows the truth and conceals it; and such constructive fraud always makes the party liable." But these observations are to be taken in connection with the fact that information was specially applied for. In the case in hand, from the impossibility of discovering, by inspection, the true character of the article offered, the vendor must have felt the vendee acted upon a confidence, inspired by the acts of the former, that the thing was what it seemed to be. But besides, here was an application for information answered by misrepresentation, and studied concealment to assist it; and the case is thus brought, as it seems to me, within the principle of Pearson v. Morgan. Nor does it help the defendant that, subject to the suggestion of falsehood, and the suppression of truth, as found by the jury, he said to the plaintiff's agent, "there it is, judge for yourself, I sell it as I bought it:" if the latter was put off his guard by the original misrepresentation, and the expressions were used in the vain expectation of escaping the responsibility already incurred. Such an artifice will not suffice to cancel the obligation incumbent upon a vendor to speak the truth, if he speak at all.

The last inquiry in cases of this nature is, was the vendee misled by the misrepresentation and concealment? In this instance, the evidence leaves little if any room for a doubt upon this head. But this, too, was a question for the jury, and was so left to them by the court. By their verdict they have returned an affirmative answer.

This general review of facts, and of the principles which must

direct the decision of the cause, disproves the existence of any mistake in the charge of the court. A detailed examination of the several errors assigned in this court, is, therefore, unnecessary, and they are dismissed with the single observation, that they suggest nothing to warrant our interference with this judgment.

The ninth error avers that the plaintiff's *narr.* is insufficient to support the verdict and judgment. This objection was very faintly urged on the argument, and is untenable. The declaration sets out a good cause of action; it may be defectively, but this is cured by the verdict. The difference is between a bad title to action, correctly pleaded, and a sufficient title, insufficiently averred.

Judgment affirmed.