**FIRESTONE TIRE AND SERVICE CENTER, O.I.S. # 798,**
Appellant,

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 22, 2004.
Decided Feb. 17, 2005.
Publication Ordered April 6, 2005.

John J. Mead, Erie, for appellant.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Firestone Tire and Service Center (Firestone) appeals from the April 27, 2004 order of the Court of Common Pleas of Erie County (trial court) that dismissed Firestone's appeal of an inspection station suspension imposed by the Department of Transportation, Bureau of Motor Vehicles (DOT). Firestone raises two questions: (1) whether its license to conduct Pennsylvania State inspections may be suspended for fraudulent record keeping where (a) the records purportedly contain no false entries and (b) it is not required to keep such records; and (2) whether the trial court erred in determining that Firestone's license may be suspended for one year pursuant to 67 Pa.Code § 175.51(a)(2)(i) upon a finding of fraudulent record keeping rather than for two months under 67 Pa.Code § 175.51(a)(4)(ix) for failing to list information on a work order. For the reasons that follow, we affirm.

By letter dated February 12, 2004, DOT notified Firestone that its certificate of appointment as an official safety inspection station was being suspended for a one-year period for fraudulent record keeping pursuant to Section 4724(a) of the Vehicle Code (Code), 75 Pa.C.S. § 4724(a).[1] The notification also provided that Firestone's suspension was based on improper and careless record keeping.

Firestone filed a timely appeal to the trial court which held a hearing on April 27, 2004. In support of the suspension, DOT presented the testimony of Bonnie Hoehn (Hoehn) who, on February 11, 2003, took her vehicle to the Firestone Tire and Service Center at Millcreek Mall in Erie, PA. N.T. at 6. Hoehn testified that she had set up an appointment and brought her vehicle to Firestone with the understanding that it was going to perform a state inspection. N.T. at 6, 18–19. She testified that she did not observe any signs indicating that Firestone was not an authorized inspection station. N.T. at 7. The manager informed her that the car would be ready in the afternoon, but he did not tell her that the vehicle would be inspected by another station. N.T. at 6–7. When Hoehn called Firestone to ask if her car was ready, she was told that there was a problem with the catalytic converter and that the car would not be ready until later in the evening. N.T. at 7. The manager later called Hoehn back and informed her that the car would not be ready until the next day because the mechanic who performed the state inspections had left for the day. N.T. at 8. Hoehn testified that she picked up the car the next day, paid for a safety inspection, and received paperwork from Firestone detailing the work that had been done. N.T. at 9. The work order stated that a "Regular/Annual In-

---

1. Section 4724(a) of the Code in pertinent part provides that "(a) General rule. The department shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department." 75 Pa.C.S. § 4724(a).

spection, Vehicle Inspection" was completed but did not set forth that it had been performed by another inspection station. N.T. 9–10. Hoehn also believed that the state inspection had been performed at Firestone. N.T. at 12. She received a new state inspection sticker on her car. N.T. at 18. Firestone personnel did not return the catalytic converter stating to Hoehn that state law required Firestone to keep it for two or four weeks. N.T. at 12–13. Hoehn later found out that Firestone's inspection license was under suspension and that her vehicle had actually been inspected by Monro Muffler Brake & Service (Monro), a secondary inspection station. N.T. at 12.

DOT also presented the testimony of Trooper Peter Harvey (Harvey), a vehicle fraud investigation unit inspector with the Pennsylvania State Police. At the hearing, Harvey was accepted as an expert witness in motor vehicles. N.T. at 22. Harvey testified that he was contacted by Hoehn because she believed Firestone had made unnecessary repairs to her vehicle. *Id.* After being informed by Hoehn that she had taken her car to Firestone for a state inspection, Harvey testified that he commenced an investigation in part because he thought Firestone was serving a suspension of its certificate of appointment. N.T. at 24. He was unable to determine whether Firestone was a certified inspection station or was suspended from performing state inspections. N.T. at 29. Harvey did state that in his expert opinion, it is an industry standard that when a vehicle has components or items taken to another facility, such information is listed on the work order. *Id.* In this case, Harvey opined that by failing to properly inform Hoehn that a secondary station conducted the state inspection, Firestone was in essence, "holding [itself]

out as though [it was] operating under a certificate of appointment by omission of fact." N.T. at 30–31.

Trooper Robert Brown, Jr. (Brown) of the Pennsylvania State Police, assisted Harvey in the investigation of Firestone. N.T. at 46. At the hearing, he was also accepted as an expert witness in the area of motor vehicles. *Id.* Brown testified that he took an undercover police vehicle to Firestone. N.T. at 47. He did not observe any signage indicating that Firestone was an official state inspection garage. *Id.* Brown testified that he approached the Firestone manager requesting a state inspection and was told that would not be a problem and that he could come back later to pick up his car. *Id.* Brown decided to remain at the station to wait for his car and observed a mechanic work on his vehicle as though the mechanic was performing a state inspection. N.T. at 48. After inquiring how long the inspection would take, the manager informed Brown that the car was out on a road test. *Id.* The road test lasted approximately one hour. N.T. at 49. Brown opined that an hour was an "exorbitant amount of time" to conduct a road test. *Id.* A state inspection sticker was eventually affixed to his vehicle. N.T. at 50. Brown testified that he received a copy of the work order for his vehicle which did not indicate that the state inspection was done elsewhere. *Id.* Firestone's manager acknowledged that similar to Hoehn's vehicle, Brown's vehicle was also taken to Monro for the state inspection. N.T. at 68.

The trial court found the testimony of Hoehn and Troopers Harvey and Brown to be credible. Specifically, in its 1925(a) opinion,[2] the trial court determined that Hoehn and Trooper Brown had brought

2. *See* Pa. R.A.P.1925(a).

their vehicles to Firestone for the purpose of obtaining a state vehicle inspection and that they were deliberately led to believe that Firestone had performed the inspections. The trial court found that this was supported by the fact that nothing on the documentation informed the consumers that the state inspections had actually been performed by another garage. The trial court reasoned that the failure of Firestone to disclose that the inspections were performed by any other facility or inspection station rendered the documents false and that such omission evidenced the intent to deceive the consumers. Accordingly, the trial court found that Firestone had engaged in fraudulent recordkeeping and dismissed Firestone's appeal.

■ Firestone's appeal to this Court followed. Our scope of review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence. *Tropeck v. Department of Transportation, Bureau of Motor Vehicles,* 847 A.2d 208 (Pa.Cmwlth.2004). Questions of witness credibility are solely within the province of the trial court. *Department of Transportation, Bureau of Traffic Safety v. Karzenoski,* 96 Pa. Cmwlth. 608, 508 A.2d 618 (1986). In cases involving alleged violations of the Code and the regulations interpreting the same, DOT has the burden of proving such violations by a preponderance of the evidence. *See Kot v. Department of Transportation,* 128 Pa.Cmwlth. 138, 562 A.2d 1019 (1989).

■ On appeal, Firestone first argues that since there were no false entries on the documents provided to the customers, its license cannot be suspended for fraudulent record keeping. In addition, Firestone argues that fraudulent record keeping under 67 Pa.Code § 175.51(a)(2)(i) does

not occur where information is omitted from a document provided to a customer. We disagree.

■ With respect to the issue of fraudulent recordkeeping, "such occurs when an entry in the record, the MV–431, is false, entered intentionally and with the purpose of deceiving." *Fiore Auto Serv. v. Department of Transportation, Bureau of Motor Vehicles,* 735 A.2d 734, 737 (Pa. Cmwlth.1998). An entry made to mislead anyone inspecting the record into believing that the record was correct is deceitful. *Department of Transportation, Bureau of Driver Licensing v. Midas Muffler Shop,* 108 Pa.Cmwlth. 199, 529 A.2d 91 (1987).

■ Although Firestone did not physically enter false entries on a MV–431, the state vehicle inspection documentation, in the form of both invoices and work orders, still omitted the fact that the state inspections were conducted by Monro, a wholly separate and distinct inspection station. As DOT correctly asserts, in Pennsylvania, one can equally be guilty of committing fraud for failing to disclose a material fact. *See e.g. Cornelius v. Molloy,* 7 Pa. 293 (1847) (holding that suppression of truth amounts to fraudulent misrepresentation where a person knows that one is about to enter into a contract and the person with such knowledge fails to disclose a material fact unknown to the party about to contract and without means of knowledge).

Both Hoehn and Brown testified that they brought their vehicles in for the purpose of having a vehicle state inspection performed by Firestone as opposed to some other inspection station. As a result and as the trial court properly reasoned, Hoehn and Brown "were deliberately led to believe that Firestone had, in fact, performed the inspection," and therefore, "the failure to disclose the fact that the [inspections were] done by someone other than

Firestone rendered the documents false." Trial court opinion at p. 6. Thus, the trial court did not err in determining that Firestone's license to conduct Pennsylvania State inspections could be suspended upon finding substantial evidence to support that it committed fraudulent record keeping.

Firestone further contends that since it is not required to maintain the records in question, it cannot be suspended for fraudulent record keeping. Firestone relies on the Court's analysis in *Fairfield Ford/V.W/Hyundai/Mitsubishi v. Department of Transportation, Bureau of Motor Vehicles*, 823 A.2d 267, 272 (Pa.Cmwlth. 2003), where we stated:

> The proper record-keeping procedures are set forth at 67 Pa.Code § 175.42 as follows. The certified mechanic who performed the inspection signs the MV–431 or MV–480 form following the inspection. 67 Pa.Code § 175.42(b). The certified mechanic, or another person, then transfers the inspection information from the work order to the appropriate form. 67 Pa.Code § 175.42(b)(1). The form must be neat and legible and completed in its entirety. 67 Pa.Code § 175.42(d). The station maintains the form in duplicate, and, upon completion of the entire sheet, forwards the original copy to DOT. 67 Pa.Code § 175.42(c). The station retains the duplicate copy for two years as a garage record. 67 Pa.Code § 175.42(c).

Firestone argues that there is no evidence that the MV–431 record kept by Firestone contained any false entries and that it contained no entries whatsoever during the time period of Firestone's suspension since it was not permitted to perform state inspections. According to Firestone, the regulations do not require that the allegedly fraudulent record be kept by Firestone, specifically where 67 Pa.Code § 175.42(a) states that "fraudulent recording of an inspection report sheet will be considered cause for suspension of inspection privileges." Under 67 Pa.Code § 175.42(b)(1), work orders that are used to record inspections must be kept for two years but only "when the inspection information is transferred from a work order to the form MV–431 or MV–480 by anyone other than the certified mechanic who performed the inspection...." Firestone argues that none of these requirements are present here, since there was no state inspection and no requirement to sign the MV–431. We similarly disagree.

Pursuant to 67 Pa.Code § 175.29, Firestone has a responsibility as the owner of an inspection station to "conduct the business of the official inspection station honestly and in the best interests of this Commonwealth, in accordance with the provisions of the [Code] and this chapter...." 67 Pa.Code § 175.29(a)(1). Furthermore, the regulations set forth that "no person shall in any manner represent a place as an official inspection station unless the station is operating under a valid certificate of appointment issued by [DOT]." 67 Pa.Code § 175.21(d). The regulations provide that it is a violation for an inspection station or certified mechanic to fail "to give a written receipt or work order to [the] customer, or to list [the] required information on [a] work order." 67 Pa.Code § 175.51(a)(4)(ix). It is also an explicit requirement that each work order be accurate. *See* 67 Pa.Code § 175.42(d) (stating that inspection report sheets should be completed in their entirety).

Although the record demonstrates that Firestone did not issue an MV–431 for either Hoehn or Brown's vehicles, it is significant to note that this was largely attributable to the fact that Firestone's state inspection privileges had already

been suspended. As Harvey testified, once a certificate of appointment to conduct state inspections is suspended, Firestone no longer was authorized to fill out a MV–431 record sheet. N.T. at 42. Despite this, there was substantial evidence in the record that Firestone deliberately failed to disclose to its customers that it was no longer operating under a valid certificate of appointment. Moreover, its own work orders failed to list all of the required information under 67 Pa.Code § 175.51(a)(4)(ix) and failed to meet the accuracy requirements of 67 Pa.Code § 175.42(d).

Furthermore, Firestone acknowledged performing what it referred to as complete vehicle inspections (CVIs), which were represented as state inspections.[3] As Firestone's own manager acknowledged, it was not necessarily possible for a lay customer to be able to differentiate between a CVI work order and a state inspection. N.T. at 66–67. Additionally compelling is the fact that Firestone's manager admitted to not disclosing to either Hoehn or Brown that their vehicles were going to be taken to a different inspection site. N.T. at 68. Thus, the trial court did not err in determining that Firestone committed fraudulent record keeping even though an MV–431 was never recorded.

■ Finally, Firestone argues that its license should not have been suspended for fraudulent record keeping on the basis that it omitted information on documents provided to customers, since there is a separate violation with a lesser penalty for failing to list required information on a work order. Firestone cites to 67 Pa.Code § 175.51(a)(4)(ix) which provides that an official inspection station's license to inspect vehicles can be suspended for "failure to give a written receipt or work order

to [the] customer, or to list [the] required information on [a] work order" and that such violation mandates a suspension of two months compared to a suspension of one year for fraudulent record keeping under 67 Pa.Code § 175.51(a)(2)(i). Firestone relies on *Department of Transportation v. Sortino*, 75 Pa.Cmwlth. 541, 462 A.2d 925 (1983), for the proposition that the rule of construction deems that fraudulent record keeping under 67 Pa.Code § 175.51(a)(4)(ix) is a separate and distinct violation from that of listing required information on work orders under 67 Pa. Code § 175.51(a)(2)(i). Thus, Firestone sets forth that the trial court erred in failing to recognize and impose the lesser suspension of two months. The Court disagrees.

The facts of record demonstrate that Firestone did more than merely fail to list information on a work order. As this Court set forth in *Midas Muffler Shop*, 529 A.2d at 93, in determining whether particular factual circumstances constitute fraud, it is "necessary to inquire whether the recordkeeping entry was falsely entered intentionally and with the purpose of deceiving.... [T]he definition of "deceit" being a declaration, artifice or practice designed to mislead another." The record again demonstrates that Firestone led both Hoehn and Brown to believe that it had the proper certification to conduct a state inspection, failed to inform either party that the inspections were performed by a different station, and gave the impression that it had conducted the inspections. As a result, there was substantial evidence in the record to support the elements of fraud or deceit as required by 67 Pa.Code § 175.51(a)(2)(i). Therefore, it was wholly appropriate for the trial court

---

**3.** Firestone's manager testified that complete vehicle inspections (CVIs) were essentially pre-inspections for the passing of a state inspection. N.T. at 55.

to impose a one-year suspension pursuant to 67 Pa.Code § 175.51(a)(2)(i), as opposed to the lesser sentence of two months pursuant to 67 Pa.Code § 175.51(a)(4)(ix).

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 17th day of February, 2005, the April 27, 2004 order of the Court of Common Pleas of Erie County is AFFIRMED.