IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 22nd Street Auto Center, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | No. 1326 C.D. 2022 |
| | : | |
| David J. Sippel, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | No. 1327 C.D. 2022 |
| Bureau of Motor Vehicles | : | Submitted: October 10, 2023 |

BEFORE:    HONORABLE ANNE E. COVEY, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                    FILED:  January 26, 2024

        22nd Street Auto Center (Auto Center) appeals from the Luzerne County Common Pleas Court's (trial court) October 18, 2022 orders overruling Auto Center's appeal from the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles' (DOT), July 15, 2022 suspension of Auto Center's Certificate of Appointment as an Official Safety Inspection Station (Certificate of Appointment) and David J. Sippel's (Sippel) appeal from DOT's suspension of his Official Safety Inspector's certification.  Auto Center and Sippel

(collectively, Appellants) present two issues for this Court's review: (1) whether the trial court should have modified DOT's penalties because DOT failed to produce evidence that violations existed at the time of DOT's inspection; and (2) whether the record evidence was sufficient to establish a claim for fraudulent recordkeeping under Section 175.51(a)(2)(i) of DOT's Regulations, 67 Pa. Code § 175.51(a)(2)(i).[1] After review, this Court vacates and remands.

Auto Center employed Sippel as an automobile mechanic. On October 2, 2021, Sippel inspected a 2000 Ford F250 pick-up truck with Vehicle Identification No. FTNX21F4YEA215390 (Vehicle) at Auto Center. Reproduced Record (R.R.) at 68-72.[2] After receiving a complaint that the Vehicle should not have passed inspection, DOT's Vehicle Inspection Division Quality Assurance Officers (QAO) Dwayne Hunsicker (QAO Hunsicker) and QAO Leo Caffrey (QAO Caffrey) reinspected the Vehicle on November 22, 2021, 51 days and an additional 1,500 miles after the original October 2, 2021 inspection date. QAO Hunsicker and QAO Caffrey concluded that the Vehicle was in such a deteriorated condition that Appellants should not have issued an inspection sticker for it on October 2, 2021. Notwithstanding, Appellants expressly represented in Auto Center's DOT Inspection Report (Form MV-431) that Sippel inspected the Vehicle's body on October 2, 2021. *See* R.R. at 68, 70.

On July 15, 2022, DOT mailed a Notice of Suspension of Official Inspection Station to Auto Center suspending its Certificate of Appointment

---

[1] Section 175.51(a) of DOT's Regulations prescribes a one-year suspension for a first offense of fraudulent recordkeeping.

[2] Pennsylvania Rule of Appellate Procedure 2173 specifies: "[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Pa.R.A.P. 2173. Because Appellants' Reproduced Record page numbers were not followed by a small a, for ease of reference, this Court will refer to the Reproduced Record pages as Appellants numbered them.

pursuant to Section 4724 of the Vehicle Code, 75 Pa.C.S. § 4724,[3] for 26 months effective August 22, 2022 (Auto Center Notice), based on the same failed inspection items. Auto Center's 26-month suspension consisted of 1 year for furnishing, lending, giving, selling, or receiving a certificate of inspection without inspection; 1 year for fraudulent recordkeeping, including the lesser offenses of improper recordkeeping and careless recordkeeping; and 2 months for improperly assigning a certificate of inspection. *See* R.R. at 7.

Also on July 15, 2022, DOT mailed a Notice of Suspension of Official Safety Inspector to Sippel suspending his Official Safety Inspector certification pursuant to Section 4726 of the Vehicle Code, 75 Pa.C.S. § 4726,[4] for 14 months effective August 22, 2022 (Sippel Notice). The Sippel Notice specified that Sippel's violations included issuing an inspection sticker for the Vehicle without conducting a required inspection

> and having the following failed inspection items: bed support rails, exhaust muffler missing, exhaust stacks without heat shields, left outer rod end with over .250 of an inch of play, missing passenger seatbelt, passenger side [U] bolt mounting plate to mount rear to spring deteriorated, [and] deteriorated floor and rocker panels.

R.R. at 5. Sippel's 14-month suspension consisted of 1 year for furnishing, lending, giving, selling, or receiving an inspection certification without inspection; and 2 months for improperly assigning a certificate of inspection. *See* R.R. at 5.

---

[3] Section 4724(a) of the Vehicle Code authorizes DOT to suspend the certificate of appointment of an official safety inspection station "which has violated or failed to comply with any of the provisions of [Chapter 47 of the Vehicle Code] or [DOT's Regulations]." 75 Pa.C.S. § 4724(a).

[4] Section 4726(b) of the Vehicle Code authorizes DOT to suspend a mechanic's certification "if [DOT] finds that the mechanic has improperly conducted inspections or has violated or failed to comply with [Chapter 47 of the Vehicle Code (relating to vehicle inspections)] or [DOT's Regulations]." 75 Pa.C.S. § 4726(b).

On August 22, 2022, Appellants filed separate appeals to the trial court.[5] On October 17, 2022, the trial court conducted a consolidated *de novo* hearing, at which QAO Hunsicker and QAO Caffrey testified and DOT presented certified copies of documents and photographs taken during the November 22, 2021 reinspection, which the trial court admitted into evidence. Appellants did not present any witnesses.[6] On October 18, 2022, the trial court filed separate orders denying Appellants' appeals.[7]

On November 17, 2022, Appellants appealed to this Court.[8] On January 5, 2023, the trial court filed its opinion pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a), Pa.R.A.P. 1925(a) (Rule 1925(a) Op.).[9] On February 6, 2023, Appellants filed an unopposed motion in this Court to consolidate the two appeals, which this Court granted on February 10, 2023.

Preliminarily, Section 175.4 of DOT's Regulations generally requires that "[a] registered vehicle moved upon a highway shall bear a valid certificate of inspection . . . [.]" 67 Pa. Code § 175.4. However, "[n]o certificate of inspection . . . may be marked or affixed to a vehicle unless the vehicle has successfully passed inspection, meeting the requirements of [the Vehicle Code, 75 Pa.C.S. §§ 101-9805,]

---

[5] Sippel surrendered his Safety Inspector's Certification on August 22, 2022. His suspension ended April 22, 2023.

[6] At the conclusion of DOT's case, Appellants made a motion for the trial court to sustain their appeals, which the trial court denied.

[7] On November 3, 2022, Appellants filed a motion for reconsideration. The trial court held a hearing on November 30, 2022. Thereafter, the parties briefed their respective positions. On December 21, 2022, the trial court denied Appellants' motion for reconsideration.

[8] "[This Court's] scope of review in an inspection certificate suspension case 'is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence.'" *Perez-Diaz v. Dep't of Transp., Bureau of Motor Vehicles*, 298 A.3d 484, 490 (Pa. Cmwlth. 2023) (quoting *Fiore Auto Serv. v. Dep't of Transp., Bureau of Motor Vehicles*, 735 A.2d 734 (Pa. Cmwlth. 1998)).

[9] The record does not reflect whether the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b), Pa.R.A.P. 1925(b).

4

and [Chapter 175 of DOT's Regulations (relating to vehicle equipment and inspections)]." Section 175.41(a) of DOT's Regulations, 67 Pa. Code § 175.41(a).

This Court has explained:

> Authorization to make official inspections of motor vehicles in Pennsylvania is a privilege and not a right. [*See*] *Commonwealth v. W. J. Harris & Son*, . . . 170 A.2d 591 ([Pa.] 1961). The inspection of motor vehicles is required in an effort to remove vehicles in an unsafe condition from being operated upon the highways, with the hoped-for result of reducing loss of life and injury. Therefore, once a violation of the inspection provisions of the [Vehicle] Code has taken place[,] [DOT] has not only the power as set forth in Section 4724 of the [Vehicle] Code, but the duty, to suspend the certificate of appointment.

*Dep't of Transp., Bureau of Traffic Safety v. Searer*, 413 A.2d 1157, 1159 (Pa. Cmwlth. 1980). "DOT has the burden of proving [Vehicle Code] violations by a preponderance of the evidence." *Firestone Tire & Serv. Ctr., Off. Inspection Station No. 798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).

Appellants argue that the trial court should have modified the penalties DOT imposed because DOT failed to produce evidence that the violations existed at the time of QAO Hunsicker's and QAO Caffrey's November 22, 2021 reinspection.

Here, DOT presented testimony from QAO Hunsicker and QAO Caffrey regarding their November 22, 2021 reinspection observations. QAO Hunsicker testified at the trial court hearing that he has been certified to conduct vehicle inspections since 1988, and he has inspected thousands of vehicles as a DOT QAO over the last seven years. The trial court qualified QAO Hunsicker as an expert in the field of vehicle safety inspections without objection.

QAO Hunsicker recalled:

A[.] I entered the [V]ehicle, found the passenger seatbelt not present in the [V]ehicle, the exhaust stacks coming out of the bed and no heat shields. It did not have a muffler on the [V]ehicle; had over a quarter inch of play on the left tie rod end [which affects steering]. The bench supports and everything was [sic] extremely deteriorated.

Q[.] Were all of these issues things that should have prevented it from receiving a sticker on October 2, 2021?

A[.] Yes.

R.R. at 26. QAO Hunsicker described that the Vehicle's bench supports were so rusted that they could no longer support a load, and the interior floor boards were deteriorated to the point that exhaust could enter the cab. *See* R.R. at 29. QAO Hunsicker added:

Throughout [DOT's R]egulations, if there is [sic] any holes or anything in the floor that could exhibit any type of exhaust gases or anything into [a] vehicle, any holes into it, it fails inspection.

Since this [Vehicle] had it that way, by [DOT's R]egulations, it failed inspection; because[] there were holes, and exhaust would go up inside the cab . . . .

R.R. at 30.

QAO Hunsicker admitted that he did not know whether the passenger seat belt was present and intact on October 2, 2021, or whether the Vehicle's owner removed the muffler or the left tie rod play had changed since October 2, 2021, but he opined that there was no way the bench support and floor board rust could have advanced to the extent they had in the days or miles driven since the original inspection. *See* R.R. at 27-29.

QAO Caffrey testified that he has been certified to conduct vehicle inspections for 39 years, during which he has inspected several thousand vehicles. The trial court qualified QAO Caffrey as an expert in the field of vehicle safety

6

inspections without objection. QAO Caffrey assisted with the Vehicle's reinspection on November 22, 2021, and photographed the Vehicle's deficiencies.

QAO Caffrey confirmed that the Vehicle's seatbelt, muffler, and heat shields were missing, and the tie rod was one-quarter inch or more out of play on November 22, 2021. *See* R.R. at 34. QAO Caffrey agreed with QAO Hunsicker that those items could have been removed and the tie rod could have loosened since the Vehicle's October 2, 2021 inspection. *See* R.R. at 31, 34. However, he concurred with QAO Hunsicker and presented photographs of the floor board deterioration that could allow exhaust gases to enter the cab, and similarly opined that that level of deterioration could not have occurred since the October 2, 2021 inspection. *See* R.R. at 32, 47-59. He further described that the Vehicle's rear axle U bolt and assembly saddle plate were so severely deteriorated and structurally visible that they lacked sufficient strength to hold the Vehicle's rear springs together, which deterioration could not have occurred since the original inspection date. *See id.* QAO Caffrey added that the Vehicle's rocker panel was completely deteriorated, thereby allowing exhaust to enter the operator's compartment, and that such condition had to have been evident at the original inspection. *See* R.R. at 32-33. Regarding the bench support, QAO Caffrey identified deterioration of the structural framework of the back of the cab and the under bench support which would not support the heavy loads for which the Vehicle was originally designed, and claimed that such could not have occurred between the inspection and reinspection dates. *See* R.R. at 33. QAO Caffrey acknowledged that rusting progresses over time, but declared that the extent of the rust on the Vehicle could not have gone from passable to complete deterioration in a seven-week period or 1,500 miles. *See* R.R. at 35. He concluded that, in his expert opinion, the Vehicle should not have passed inspection on October 2, 2021. *See* R.R. at 36.

"The admissibility of evidence is within the discretion of the trial judge, and his discretion is abused when he erroneously admits evidence, i.e., evidence which suggests a decision on an improper basis[.]" *Kot v. Dep't of Transp.*, 562 A.2d 1019, 1021 (Pa. Cmwlth. 1989). More specifically, "[q]uestions of witness credibility are solely within the province of the trial court." *Perez-Diaz v. Dep't of Transp., Bureau of Motor Vehicles*, 298 A.3d 484, 490 n.2 (Pa. Cmwlth. 2023).

In addition, this Court has observed:

> In *Bob Wark's Arco v. Department of Transportation, Bureau of Traffic Safety*, . . . 455 A.2d 770 ([Pa. Cmwlth.] 1983), the [trial] court allowed [DOT's] expert to testify as to whether defects readily observable at the time of reinspection were also observable at the time of inspection. In *Milanovich v. Commonwealth*, . . . 445 A.2d 1337 ([Pa. Cmwlth.] 1983), th[is C]ourt said there must be reliance upon credible opinion testimony to meet the needs of the situation when there is not firsthand testimony of the vehicle's condition at the time of the official inspection.

*Kot*, 562 A.2d at 1021.

> Further,

> [a] trial court's role in an inspection certificate appeal is limited *solely to a de novo determination of whether the person charged with the violation has indeed committed the violation for which the sanction was imposed*. The [trial] court may not, as a parallel to exercising its discretion *as fact*[-]*finder*, do more than (1) affirm [DOT's] penalty because the law as applied to the facts heard *de novo* leads to a conclusion of a violation of the law or (2) reverse [DOT's] penalty because the law as applied to the facts heard *de novo* does not lead to a conclusion of a violation of law. The [trial] court may not, because of the possible unfairness or inequity of the result, reverse [DOT] or modify the penalty imposed.

*Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 527-28 (Pa. Cmwlth. 2009) (emphasis added) (quoting *Dep't of Transp., Bureau of Traffic Safety*

8

*v. Verna*, 351 A.2d 694, 695 (Pa. Cmwlth. 1976) (emphasis in original)).  Because DOT's penalties are mandatory, the trial court can only modify them if it makes new factual findings and reaches a new conclusion of law.  *See Dep't of Transp., Bureau of Driver Licensing v. Cappo*, 527 A.2d 190 (Pa. Cmwlth. 1987); *see also Dep't of Transp., Bureau of Driver Licensing v. Altier*, 557 A.2d 1167, 1167 (Pa. Cmwlth. 1989) ("If the trial court makes findings of fact or conclusions of law differing from those made by DOT, [it] may then modify the imposed penalty.").

Here, the trial court declared:

> Based on the above record, th[is] trial court found that [QAO] Hunsicker and [QAO] Caffrey each were adequately credentialed and experienced in the field of motor vehicle safety inspection to be recognized as, and offer the opinion testimony of, an expert in such field. Th[is] trial court found the testimony of each [expert] credible, particularly with respect to their having opined that the state of deterioration in the body and flooring of the Vehicle was such that holes in the flooring of the Vehicle would have existed and would have been readily ascertainable - given the administration of a proper official safety inspection - as of sufficient placement and characteristics to have been capable of permitting exhaust gases to enter its passenger cabin.
>
> Based on the above record, th[is] trial court found too that evidence of other equipment violations - e.g., photographs and expert opinion testimony regarding the lack of a required seatbelt in the cab, missing exhaust components, and damaged suspension/steering components - was not substantial and [DOT] failed to carry its burden to prove by a preponderance of the evidence that the gross equipment violations existed at the time the certificate of inspection was issued by [Sippel] for the Vehicle.

Rule 1925(a) Op. at 7-8 (R.R. at 109-110).

The trial court concluded:

> The evidence presented by []DOT in the form of photographic evidence and opinion testimony from two

9

experts in the field of vehicle safety inspections is substantial and supports the findings of th[is] trial court that the rust deterioration defects amounting to holes in the flooring and floor beds of the Vehicle existed at the time [Sippel] issued a certificate of inspection to the Vehicle at [Auto Center] on October 2, 2021. Further, th[is] trial court found and concluded that at that time, such deterioration defects could reasonably have been discerned upon a proper inspection and that they . . . would have been readily recognizable [by Sippel] as permitting the possibility of exhaust gas entering the cab of the Vehicle in violation of [Sections 175.78(d) or 175.108(d) of DOT's Regulations,] 67 Pa. Code §§ 175.78(d) [(relating to light trucks)] or 175.108(d) [(relating to medium and heavy trucks)].

Rule 1925(a) Op. at 10-11 (R.R. at 124-125).

Sections 175.78(d) and 175.108(d) of DOT's Regulations state: "Flooring and floor beds shall be of a construction to support occupants and cargo which the vehicle is capable of carrying and may not have openings through which exhaust gases could enter passenger compartment." 67 Pa. Code § 175.78(d), 175.108(d). The trial court expressly found QAO Hunsicker's and QAO Caffrey's testimony credible regarding the extensively deteriorated bench supports, floor boards, and rocker panels due to rust on the Vehicle that could allow exhaust to enter the passenger compartment.[10] *See* Rule 1925(a) Op. (R.R. at 109). The trial court also found that such rust would have been present on October 2, 2021, when Sippel, on Auto Center's behalf, issued a safety inspection sticker.

On review of the unrebutted evidence, this Court agrees with the trial court that DOT presented substantial evidence that supported the trial court's conclusion regarding the Vehicle's significant rust and body deterioration that would have existed and Appellants could have reasonably discerned upon a proper inspection on October 2, 2021, and for which the Vehicle should have failed

---

[10] Notably, "Appellants do not challenge the finding of those violations." Appellants' Br. at 11.

10

inspection. This Court also agrees with the trial court that DOT failed to produce substantial record evidence to support its conclusion that "the lack of a required seatbelt in the cab, missing exhaust components, and damaged suspension/steering components[]" would have been evident to Sippel on October 2, 2021. Rule 1925(a) Op. at 7 (R.R. at 109, 121). Although the former supports the trial court's conclusion that Appellants violated Sections 4724(a) and 4726(b) of the Vehicle Code, in reaching the latter conclusion, the trial court made new factual findings and, thus, could have modified DOT's suspensions. *See Cappo*; *see also Altier*. Nevertheless, either due to oversight or error of law, without explanation, the trial court did not do so. Without the benefit of the trial court's reasoning, this Court is unable to conduct meaningful appellate review. Accordingly, this Court must remand this matter for the trial court to further address whether it considered modifying the suspensions in light of its new findings of fact and, if so, why it declined to do so.

Appellants also contend that the record evidence was not sufficient to establish a claim for fraudulent recordkeeping under Section 175.51(a)(2)(i) of DOT's Regulations. Appellants specifically claim that neither QAO Hunsicker nor QAO Caffrey testified about fraud or stated that the recordkeeping was done in a manner so as to deceive DOT, and DOT's counsel did not argue that Auto Center submitted or maintained its records with the intent of deceiving DOT.

DOT presented substantial record evidence of sufficient rust and body deterioration on the Vehicle as to render it unsafe, and that such conditions would have been evident on October 2, 2021, but Appellants represented on Form MV-431 that Appellants inspected the Vehicle, including the body, and issued an inspection sticker.

Section 175.42(a) of DOT's Regulations provides, in relevant part:

(c) *Records retention*.

11

(1) The original official inspection report sheet (Form MV-431 or MV-480) **shall be retained as a garage record and kept on file at the station for audit**. At the close of each inspection period, the official inspection report sheet shall be placed in the station's files, even though all spaces may not have been used, and a new inspection report sheet shall be started for the new inspection period.

(2) **A work order** signed by the inspecting mechanic as required under this section **shall be available for inspection upon request** by the inspection station supervisor or an authorized representative of [DOT].

(d) *Content*.

(1) *Stations utilizing Form MV-431 or MV-480*. **The paper inspection report sheet** (Form MV-431 for passenger cars, trucks and buses or MV-480 for motorcycles and trailers) **shall be** neat and legible and **completed in its entirety**. **Details pertinent to every vehicle inspected**, **including rejections**, **shall be recorded on the report sheet at the time of inspection**. Items inspected, adjusted or repaired shall be recorded.

67 Pa. Code § 175.42 (emphasis added).

Section 175.42(a) of DOT's Regulations similarly mandates:

(a) *Personal liability*. It is the responsibility of the owner of an inspection station to do all of the following:

(1) **To conduct the business of the official inspection station honestly and in the best interests of this Commonwealth**, in accordance with the provisions of [the Vehicle Code] and [Chapter 175 of DOT's Regulations], and, except in the case of a fleet or Commonwealth inspection station, to make every reasonable effort to inspect all vehicles upon request.

. . . .

(4) **To keep inspection records and required work orders available for examination and audit** by the inspection station supervisor and other authorized persons.

67 Pa. Code § 175.29(a) (emphasis added).

12

Section 175.51(a)(2)(i) of DOT's Regulations specifies that fraudulent recordkeeping carries a one-year suspension for a first violation.[11] *See* 67 Pa. Code § 175.51(a)(2)(i). Section 175.51(a)(2)(ii) of DOT's Regulations imposes a two-month suspension for a first violation of improper recordkeeping, *see* 67 Pa. Code § 175.51(a)(2)(ii), and Section 175.51(a)(2)(viii) of DOT's Regulations calls for a warning for a first offense of careless recordkeeping. *See* 67 Pa. Code § 175.51(a)(2)(viii).

Although the trial court properly found that rust had deteriorated the Vehicle's body to the point that exhaust gases could enter the passenger compartment, and that such damage would have been evident on October 2, 2021, the trial court did not make factual findings or otherwise address whether DOT proved that Appellants' representation on the Form MV-431 that the Vehicle passed inspection was fraudulent rather than merely careless or improper.[12] Without the

---

[11] Section 175.42(a) of DOT's Regulations declares: "Fraudulent recording of an inspection will be considered cause for suspension of inspection privileges." 67 Pa. Code § 175.42(a). This Court has held:

> With respect to the issue of fraudulent recordkeeping, "such occurs when an entry in the record, the [Form] MV-431, is false, entered intentionally and with the purpose of deceiving." *Fiore . . .* , 735 A.2d [at] 737 . . . . An entry made to mislead anyone inspecting the record into believing that the record was correct is deceitful. [*See*] *Dep*[*']t of Transp*[.]*, Bureau of Driver Licensing v. Midas Muffler Shop*, . . . 529 A.2d 91 ([Pa. Cmwlth.] 1987).

*Firestone*, 871 A.2d at 867.

[12] The trial court only declared:

> [DOT's R]egulations at [Sections] 175.51(a)(1)(ii) and (a)(2)(v)[, 67 Pa. Code §§ 175.51(a)(1)(ii), (2)(v),] provide, respectively, that a violation for the giving of a certificate of inspection without inspection precipitates the issuance of a [one-]year certification suspension and violation for improperly assigning a certificate of inspection corresponds to a [two-]month certification suspension.

Rule 1925(a) Op. at 8 (R.R. at 110, 122).

13

benefit of the trial court's reasoning, this Court is unable to conduct meaningful appellate review. Accordingly, this Court must remand this matter for the trial court to address this issue.

Based on the foregoing, the trial court's orders are vacated, and this matter is remanded to the trial court for further action consistent with this Opinion.

_____

ANNE E. COVEY, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

22nd Street Auto Center,
             Appellant

        v.

Commonwealth of Pennsylvania,
Department of Transportation,
Bureau of Motor Vehicles

David J. Sippel,
             Appellant

        v.

Commonwealth of Pennsylvania,
Department of Transportation,
Bureau of Motor Vehicles

:   CASES CONSOLIDATED

:   No. 1326 C.D. 2022

:   No. 1327 C.D. 2022

## O R D E R

AND NOW, this 26th day of January, 2024, the Luzerne County Common Pleas Court's (trial court) October 18, 2022 orders are vacated, and this matter is remanded to the trial court for further action consistent with this Opinion.

Jurisdiction is relinquished.

_____

ANNE E. COVEY, Judge