IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sahara Auto Sales and Service, | : | **CASES CONSOLIDATED** |
| Appellant | : | |
| v. | : | No. 409 & 410 C.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | |
| | : | |
| Victor Vega, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 411 C.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | |
| | : | |
| Ibrahim El-Dabsheh, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 412 & 413 C.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | Submitted: September 9, 2025 |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: October 7, 2025

In these consolidated appeals, Sahara Auto Sales and Service (Sahara), Victor Vega (Vega), and Ibrahim El-Dabsheh (El-Dabsheh) (together, Appellants) appeal from five orders entered by the Court of Common Pleas of Luzerne County (trial court) on March 24, 2023. The orders denied Appellants' appeals from notices

of suspension issued by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (PennDOT), which suspended Sahara's certificate of appointment as an official safety inspection station and Vega's and El-Dabsheh's certifications as official safety inspectors.

In this Court, Appellants contend that the trial court erred in finding that PennDOT carried its burden of proof to establish with substantial evidence all of the elements of each of the violations supporting the suspensions. They further argue that the trial court should have reduced the term of the suspensions.

Upon review, we affirm in part, and reverse in part, the trial court's orders as set forth below.

## I. FACTS AND PROCEDURAL HISTORY

Although the trial court conducted a single hearing on all five of Appellants' appeals, it bifurcated the hearing and received evidence separately regarding (1) the consolidated appeals filed at trial court docket nos. 4082 and 4083 of 2022 (Nos. 413 & 410 C.D. 2023), and (2) the consolidated appeals filed at trial court docket nos. 5575-77 (Nos. 409, 412, & 411 C.D. 2023). The trial court issued separate opinions with findings of fact, conclusions of law, and analysis, and the opinions for each group are substantially identical. The evidence and findings may be summarized as follows.

**Trial Court Docket Nos. 4082 & 4083 (Nos. 413 & 410 C.D. 2023)**

**Trial Court Docket No. 4083 (No. 410 C.D. 2023)**

On April 11, 2022, PennDOT issued to Sahara an Order of Suspension of Official Inspection Station in which PennDOT suspended Sahara's Certificate of Appointment as an Official Safety Inspection Station for a total of six months, commencing on May 16, 2022. The six-month period comprised consecutive

2

suspensions of (1) two months for improper recordkeeping, (2) two months for faulty inspection of equipment or parts, and (3) two months for improperly assigning certificates of inspection. (Reproduced Record (R.R.), Volume I, at 6a.) The order specified that the suspension was based on Sahara's issuance of an inspection sticker on October 21, 2021, for a vehicle with failing inspection items including a broken exhaust hanger and a severely deteriorated rear subframe repaired with spray foam and undercoating. *Id.* at 6a, 10a. PennDOT declined to offer Sahara points in lieu of a suspension on the ground that "the station owner/manager committed the violation(s)." *Id.* at 8a.[1]

## Trial Court Docket No. 4082 (No. 413 C.D. 2023)

Also on April 11, 2022, PennDOT issued to El-Dabsheh an Order of Suspension of Official Safety Inspector suspending El-Dabsheh's certification as an Official Safety Inspector for a total of six months, commencing on May 16, 2022.

---

[1] Section 175.51(b)(1)-(2) of PennDOT's regulations provides as follows:

> (b) *Assignment of points*. [PennDOT] will permit the station owner to consent to the acceptance of a point assessment for the station in lieu of suspension, **if the station owner, manager, supervisor or other management level employe[e] was without knowledge of the violation, and should not have known of the violation.**
>
> **(1) The station owner bears the burden of proving that it provided proper supervision of the employe who committed the violation, but that supervision could not have prevented the violation.**
>
> (2) By accepting the assessment of points the station owner waives the right to appeal [PennDOT's] determination in the case to a court of record. If the station owner refuses to accept the point assessment, the Department will issue the suspension indicated in this subchapter.

67 Pa. Code § 175.51(b)(1)-(2) (emphasis added). The order of suspension indicates that points were not offered because El-Dabsheh, Sahara's owner, committed the violations and therefore presumably was not "without knowledge" of them. (R.R., Volume I, at 6a.) Appellants have not challenged this aspect of the suspension order.

As with El-Dabsheh, the six-month period comprised consecutive suspensions of (1) two months for improper recordkeeping, (2) two months for faulty inspection of equipment or parts, and (3) two months for improperly assigning certificates of inspection. (R.R., Volume I, at 13a.) The suspension was based on the same safety inspection performed at Sahara on October 21, 2021. *Id.* at 13a.

Common Evidence

Sahara and El-Dabsheh appealed the suspensions to the trial court, which conducted a hearing on January 9, 2023. For those appeals, the Commonwealth first presented the testimony of Bernard Skibinski (Officer Skibinski). Officer Skibinski is Quality Assurance Officer (QAO) for PennDOT's Vehicle Inspection Division responsible for ensuring that official inspection stations comply with PennDOT's Publication 45,[2] which governs safety and emissions inspections of motor vehicles. Officer Skibinski is a mechanic, has been certified as a QAO for approximately 30 years, and has inspected hundreds of vehicles. The trial court accepted Officer Skibinski as an expert in vehicle safety inspection without objection.

On October 27, 2021, Officer Skibinski received a complaint from the purchaser of a vehicle about the vehicle's condition. The vehicle was purchased on October 21, 2021, and was inspected at Sahara the same day. Upon reinspecting the vehicle on October 27, 2021, Officer Skibinski discovered a broken exhaust hanger and a severely deteriorated and rotted rear subframe in dangerous condition, which

---

[2] Publication 45 is a compilation of "Vehicle Equipment and Inspection Regulations" promulgated by PennDOT. *See* Commonwealth of Pennsylvania, Department of Transportation, Publication 45 (2020), *available at* https://www.pa.gov/content/dam/copapwp-pagov/en/penndot/documents/public/dvspubsforms/bmv/bmv-manuals/pub_45-inspections-regulations/pub-45.pdf (last visited October 7, 2025). The regulations in Publication 45 are codified as Chapter 175 of Title 67 of the Pennsylvania Code, 67 Pa. Code. §§ 175.1 – Chart 5.

someone illegally attempted to repair with spray foam and undercoating. In the six-day period between the date of the original inspection and the date of Officer Skibinski's reinspection, the vehicle traveled 95 miles. Officer Skibinski testified that the condition of the vehicle could not have deteriorated to its present state in such a short period of time. The trial court found Officer Skibinski's testimony to be "very credible." (Trial Court Opinions (Trial Ct. Ops.), Nos. 413 & 410 C.D. 2023, 7/11/23, Finding of Fact (FOF) 14.)

Next, PennDOT presented the testimony of Ross Perchak (Officer Perchak), a QAO and employee of PennDOT subcontractor Parsons Corporation who audits inspection stations in Luzerne County. After Officer Perchak was notified of Officer Skibinski's reinspection of the subject vehicle, he visited Sahara and reviewed its MV-431[3] book. The book showed that the inspection of the vehicle occurred at Sahara. Officer Skibinski interviewed El-Dabsheh, who has been the owner of Sahara since 2008. El-Dabsheh told Officer Perchak that he checks vehicles for rust and structural integrity, that the subject vehicle was in good condition when he inspected it, and that he is not aware of what happened to it after the inspection.

El-Dabsheh testified next. He described his method for conducting safety and emissions inspections and indicated that, although both he and Vega perform inspections at Sahara, Vega performs inspections part time and is not a Sahara employee. El-Dabsheh described his inspection of the subject vehicle, which was done for a dealership. He stated that, when he inspected the vehicle, it did not

---

[3] Form MV-431 is a form issued by PennDOT for recording completed vehicle inspections. Section 175.42(b), (c) of PennDOT's regulations requires that completed MV-431 forms contain the inspector's signature and be stored and made available at the inspection station for audit. 67 Pa. Code § 175.42(b), (c).

5

look like it did on the day of Officer Skibinski's reinspection, and he believed it was safe. El-Dabsheh insisted that Sahara does not use spray foam to repair vehicles and did not do so on the subject vehicle. He further testified that if the vehicle was in such a poor condition the day he inspected it, he would not have passed it. El-Dabsheh agreed with Officer Skibinski that the spray foam repair was improper.

The trial court denied the appeals, concluding that PennDOT carried its burden to establish that El-Dabsheh, as the owner of Sahara, improperly passed the vehicle's inspection. The trial court further concluded that Sahara kept improper records by recording that the vehicle passed inspection when it should have failed. In rendering its conclusions, the trial court credited the testimony of both Officers Skibinski and Perchak that the vehicle's condition as of reinspection was below passing standards and there was no possibility that the vehicle reached that condition 6 days and 95 miles after the initial inspection on October 21, 2021. (Trial Ct. Ops., Nos. 410 & 413 C.D. 2023, at 6.) The Court found El-Dabsheh's testimony to be not credible given the extremely poor condition of the vehicle as of reinspection and the short period of time between the original inspection and reinspection. *Id.* at 7 (relying on *Szot v. Commonwealth*, 456 A.2d 734 (Pa. Cmwlth. 1983)).

**Trial Court Docket Nos. 5575-77 (Nos. 409, 412, & 411 C.D. 2023)**

**Trial Court Docket No. 5575 (No. 409 C.D. 2023)**

On June 13, 2022, PennDOT hand-delivered to Sahara an Order of Immediate Suspension of Official Inspection Station, which immediately suspended Sahara's Certificate of Appointment as an Official Safety Inspection Station based on citations for faulty inspection of equipment or parts, missing or broken required inspection tools, and **improper** recordkeeping. (R.R., Volume I, at 21a.) Thereafter, PennDOT mailed to Sahara on June 29, 2022, an Order of Suspension of Official

6

Inspection Station suspending, effective June 13, 2022, Sahara's Certificate of Appointment for a total of two years and four months, comprising (1) one year for **fraudulent** recordkeeping, including lesser included offenses of improper and careless recordkeeping, (2) one year for faulty inspection of equipment or parts, and (3) four months for improper assignment of certificates of inspection. The order also issued a warning for broken or missing inspection equipment. *Id.* at 19a.

### Trial Court Docket No. 5576 (No. 412 C.D. 2023)

On June 13, 2022, PennDOT hand-delivered to El-Dabsheh an Order of Immediate Suspension of Safety Inspector, which immediately suspended El-Dabsheh's certification as an Official Safety Inspector based on citations for faulty inspection of equipment or parts, missing or broken required inspection tools, and **improper** recordkeeping. *Id.* at 31a. Thereafter, PennDOT mailed to El-Dabsheh on June 29, 2022, an Order of Suspension of Official Safety Inspector suspending, effective June 13, 2022, El-Dabsheh's certification for a total of two years and four months, comprising (1) one year for **fraudulent** recordkeeping, including lesser included offenses of improper and careless recordkeeping, (2) one year for faulty inspection of equipment or parts, and (3) four months for improper assignment of certificates of inspection.[4] The order also issued a warning for broken or missing inspection equipment. *Id.* at 30a.

### Trial Court Docket No. 5577 (No. 411 C.D. 2023)

On June 13, 2022, PennDOT hand-delivered to Vega an Order of Immediate Suspension of Safety Inspector, which immediately suspended Vega's

---

[4] For both Sahara and El-Dabsheh, PennDOT imposed one-year suspensions for faulty inspections and four-month suspensions for improper assignment of certificates of inspection. Pursuant to 67 Pa. Code § 175.51(a)(1)(iii), (2)(v), those suspension lengths are penalties for *second* violations. It is not clear in the record why PennDOT imposed suspensions for second violations, and Appellants have not challenged the suspensions in this respect.

7

certification as an Official Safety Inspector based on citations for faulty inspection of equipment or parts, missing or broken required inspection tools, and **improper** recordkeeping. *Id.* at 34a. Thereafter, PennDOT mailed to Vega on June 28, 2022, an Order of Suspension of Official Safety Inspector suspending, effective June 13, 2022, Vega's certification for a total of one year and two months, representing (1) one year for **fraudulent** recordkeeping, including lesser included offenses of improper and careless recordkeeping, (2) two months for faulty inspection of equipment or parts, and (3) two months for improper assignment of certificates of inspection. *Id.* at 32a.[5]

Common Evidence

For this second group of appeals, PennDOT first presented the testimony of Mark Zmiejko (Officer Zmiejko), a QAO for PennDOT responsible for reviewing and approving inspection audit results and paperwork before they are sent to PennDOT. On June 13, 2022, Officer Zmiejko completed an audit of Sahara for both general and enhanced inspections. General inspections are inspections of road-ready vehicles that already have titles, registrations, and insurance. Enhanced inspections are for vehicles that, for one reason or another, would require a "branded title," such as vehicles that have been in an accident, were recovered after thefts, or were involved in floods. Officer Zmiejko indicated that Sahara did not have on hand

---

[5] It is not clear from the record why the immediate suspensions for El-Dabsheh, Sahara and Vega were based, in part, on *improper* recordkeeping, which was then changed to *fraudulent* recordkeeping in the final suspension orders. It further is not clear from the record why Vega's suspensions for faulty inspections and improper assignment of inspection certificates were for first violations while those for El-Dabsheh and Sahara were for second violations.

all of the tools required to conduct inspections.[6] El-Dabsheh told Officer Zmiejko that Vega was part owner or an affiliate of Sahara and that he permitted Vega to conduct inspections at Sahara. Vega inspected his own vehicles at Sahara, which had salvage certificates requiring enhanced inspections. Sahara's records indicated that Vega conducted 17 enhanced inspections of his own vehicles, which is not permitted under the enhanced inspection program.[7]

Officer Zmiejko's audit revealed that the following items were missing from Sahara's records: photographs of the inspected vehicles, receipts for parts used to repair the vehicles, and statements from repairpersons as to whether the vehicle was adequately checked. Without those items, the vehicles should not have passed inspection. Officer Zmiejko also discovered that the inspections of several vehicles,

---

[6] Section 175.26(a) of PennDOT's regulations provides that "[a]n inspection station shall have tools and equipment in good operating condition sufficient to inspect each type of vehicle to be inspected[.]" 67 Pa. Code § 175.26(a).

[7] Section 175.211 of PennDOT's regulations governs inspections of reconstructed vehicles requiring the issuance of a title. It provides as follows:

> A vehicle shall be inspected by a certified inspection mechanic to insure the vehicle conforms to Vehicle Code and this title prior to titling. **The vehicle owner shall not be the inspecting mechanic.** A certificate of inspection shall not be issued upon initial inspection. After the title and registration have been issued, an inspection station shall reinspect the vehicle to make certain the vehicle still complies with this chapter and only then shall a certificate of inspection be issued. Failure to follow proper inspection procedures in either of the two inspections listed in this chapter will be reasonable grounds to suspend the station and mechanic under Subchapter D (relating to schedule of penalties and suspensions: official inspection stations and certified mechanics).

67 Pa. Code § 175.211 (emphasis provided).

including a trailer and a motorcycle, were recorded in the wrong record books.[8] Officer Zmiejko testified that several tools required to conduct either general or enhanced inspections were missing or not operational, including a tint meter, laser pointer, brake micrometer, brake measurement tool, truing stand, spoke wrench, torque wrench, and multi-meter. El-Dabsheh told Officer Zmiejko that he was not aware that Sahara had to retain copies of enhanced inspection paperwork. He further explained that they measured brakes either with a micrometer[9] or by "eyeballing" it.

As to Vega, Officer Zmiejko testified that El-Dabsheh told him that Vega was part owner of Sahara. He further testified that Vega is part owner of VPR Motors, and Vega conducted at Sahara 17 enhanced inspections of vehicles owned by VPR Motors. Officer Zmiejko indicated that the tools to conduct an inspection must be housed at the site of the inspection and may not be transported there by the inspector. The trial court found Officer Zmiejko's testimony to be very credible.

PennDOT next re-called Officer Perchak, who was present at Sahara for Officer's Zmiejko's audit. He confirmed that several inspections were recorded in the wrong book and that Vega had inspected 17 vehicles owned by VPR Motors. Officer Perchak also confirmed that inspectors cannot enhance-inspect their own vehicles. The trial court found Officer Perchak's testimony to be very credible.

Vega then testified on his own behalf. He indicated that El-Dabsheh is the owner of Sahara and that he (Vega) does not own any part of Sahara and is not

---

[8] Officer Zmiejko explained that general inspections and enhanced inspections are recorded together, and the type of book used depends on the type of vehicle inspected. Inspections of vehicles such as trailers and motorcycles are recorded in the MV-480 book. *See* 67 Pa. Code § 175.42(f)(2). Inspections of other motor vehicles are recorded in the MV-431 book. *Id.*, § 175.42(f)(1).

[9] Officer Zmiejko's audit revealed that Sahara's brake micrometer had a dead battery. (R.R. at 23a.)

10

an employee. He confirmed that he conducted some of the 17 enhanced inspections of vehicles owned by VPR Motors and that all of the inspections were conducted at Sahara because VPR Motors could not enhance-inspect its own vehicles at its garage. Vega explained that he is a 15 percent owner of VPR Motors, which is a partnership shared by Vega, his wife, and another individual. Vega further explained that he is on the roster of certified inspectors at Sahara, that he took his own tools to Sahara to conduct the enhanced inspections, and that he was not aware of any laws precluding him from doing so. He is aware that enhanced inspection stations must have onsite all the tools necessary to conduct inspections.

Lastly, El-Dabsheh testified and confirmed that Vega performed at Sahara the 17 enhanced inspections of vehicles owned by VPR Motors.

The trial court made identical findings of fact for all three appeals and concluded in each that PennDOT carried its burden of proof to establish that Appellants (1) performed fraudulent, improper, and careless recordkeeping in violation of 67 Pa. Code §§ 175.32(d), 175.33(d); (2) performed faulty inspections and improperly assigned certificates of inspection; and (3) did not possess the required inspection tools or possessed nonfunctioning tools in violation of 67 Pa. Code § 175.211. The trial court lastly concluded that the suspensions imposed by PennDOT for these violations were reasonable. (Trial Ct. Ops., Nos. 409, 411, & 412 C.D. 2023, at 6-9.)

## II. ISSUES[10]

---

[10] The statement of issues and argument sections of Appellants' brief do not distinguish between the issues presented in each of the consolidated cases, which are not identical. Appellants' brief therefore does not conform to Pennsylvania Rules of Appellate Procedure 2116(a) or 2119(a). *See* Pa.R.A.P. 2116(a), 2119(a). We nevertheless exercise our discretion and address Appellants' issues to the extent we have been able to discern them.

In their consolidated appellate brief, Appellants present three issues: (1) whether the trial court erred in concluding that PennDOT carried its burden of proof to establish all of the elements of all alleged violations by a preponderance of the evidence in the record; (2) whether the trial court's findings are supported by substantial evidence; and (3) whether the trial court erred in declining to reduce the length of the suspensions or the amount of the fines imposed.[11]

## III.   DISCUSSION[12]

### A.   Burden of Proof and Substantial Evidence

Whether PennDOT carried its burden of proof and whether the trial court's findings are supported by substantial evidence in the record are distinct but related issues, and we will address them together. Where a license suspension is based on violations of the Vehicle Code and its associated regulations, PennDOT must prove the violations by a preponderance of the evidence. *Firestone Tire & Service Center, O.I.S. No. 798* v. *Department of Transportation*, 871 A.2d 863, 967 (Pa. Cmwlth. 2005). The preponderance of the evidence standard is the lowest evidentiary standard, requiring the party with the burden of proof to tip the evidentiary scales in its favor or, in other words, to present such evidence from which

---

[11] PennDOT did not impose any fines in association with any of the violations in this case. Fines are not an available penalty for safety inspection violations. *See generally* 67 Pa. Code § 175.51.

[12] Our review in a license suspension appeal is to determine whether the trial court's findings of fact are supported by substantial evidence and whether the trial court erred as a matter of law or abused its discretion. *Stevens v. Department of Transportation, Bureau of Driver Licensing*, 309 A.3d 193, 200 n.11 (Pa. Cmwlth. 2024). Because the trial court is the factfinder in license suspension appeals, it determines both the credibility of witness testimony and the weight to be assigned to the evidence, which determinations will not be "second-guessed" in this Court. *Park v. Department of Transportation, Bureau of Driver Licensing*, 178 A.3d 274, 284 (Pa. Cmwlth. 2018).

the factfinder may find that facts making that party's case are more likely true than not true. *Pennsylvania State Police v. Doe*, 217 A.3d 455, 464 (Pa. Cmwlth. 2016). Relatedly, the trial court's findings must be supported by substantial evidence in the record, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Helwig v. Department of Transportation, Bureau of Driver Licensing*, 99 A.3d 153, 159 (Pa. Cmwlth. 2014) (citation omitted).

1.      **Trial Court Docket Nos. 4082, 4083 (Nos. 413 & 410 C.D. 2023)**

With regard to the violations associated with the inspection conducted by El-Dabsheh at Sahara on October 21, 2021, PennDOT imposed suspensions of two months for improper recordkeeping, two months for faulty inspection of equipment or parts, and two months for improperly assigning a certificate of inspection. 67 Pa. Code. § 175.51(a)(1)(iii), (2)(iii), (v). Appellants contend generically that PennDOT did not carry its burden to establish, by a preponderance of substantial evidence in the record, that El-Dabsheh improperly conducted the inspection. (Appellants' Br. at 10-13.) Appellants also argue that the trial court erred in not crediting El-Dabsheh's testimony as the mechanic who performed the inspection. *Id.* at 12.[13]

The trial court credited the testimony of Officers Skibinski and Perchak concerning the condition of the vehicle on re-inspection and the documentary evidence introduced showing that the subject vehicle was inspected by El-Dabsheh at Sahara. (Trial Ct. Ops., Nos. 413 & 410 C.D. 2023, at 6-7; FOF 14, 20.) The trial court discredited El-Dabsheh's testimony that the vehicle was not in poor condition

---

[13] The only PennDOT regulations referenced by Appellants anywhere in their brief are 67 Pa. Code §§ 177.427(3) and 177.601, both of which apply only to *emission* inspections, which are not at issue in this case. (Appellants' Br. at 12-13.)

on October 21, 2021, citing the short six-day period of time between the original inspection and reinspection. *Id.* at 7.

This Court will not second-guess a trial court's credibility determinations in a license suspension appeal which, along with the weight to be assigned to the evidence, are matters "solely within the province of the trial court as fact-finder." *Park*, 178 A.3d at 284. Likewise, the resolution of conflicting evidence is a matter for the trial court and is not an issue proper for this Court's review. *Id.* The trial court's credibility determinations in this regard resolve the conflicts in the evidence, and we will not disturb them. Moreover, nowhere do Appellants dispute that the condition of the vehicle on reinspection, if present at the original inspection, would have compelled a failed inspection. Thus, the violations for performing a faulty inspection and improperly assigning a certificate of inspection accordingly have been established by a preponderance of substantial evidence in the record.

With regard to the recordkeeping violation, the trial court concluded that the evidence supported the violation because it established that Sahara and El-Dabsheh "improperly kept records when they recorded the subject vehicle as passing inspection when it should have failed." (Trial Ct. Ops., Nos. 413 & 410 C.D. 2023, Conclusion of Law (COL) 5.) Although the term "improper recordkeeping" is not defined in PennDOT's regulations, we have construed it according to its common usage. *Fairfield Ford/VW/Hyundai/Mitsubishi v. Department of Transportation, Bureau of Motor Vehicles*, 823 A.2d 267, 272 (Pa. Cmwlth. 2003); *see also Department of Transportation, Bureau of Driver Licensing v. Cappo*, 527 A.2d 190, 192 (Pa. Cmwlth. 1987). "Improper" means "not accordant with fact, truth, or right procedure, *i.e.*, incorrect, inaccurate." *Cappo*, 527 A.2d at 193 (internal quotations omitted).

14

By comparison, we have interpreted "careless recordkeeping" to be recordkeeping that is performed without ordinary or proper care or in a neglectful or inattentive manner. *Id.* We have further explained the difference between "improper" and "careless" recordkeeping as follows:

> To prove improper recordkeeping, it is necessary to show that inaccuracies exist or that incorrect information is included in the records. . . .
>
> Careless recordkeeping is a lesser included offense of improper recordkeeping. Inaccuracies and incorrect information find their way into records because of incorrect methods, procedures, and practices in their keeping. That the inaccuracies exist is sufficient proof to find liability. A showing of inadvertence, however, lowers the presence of the inaccuracy to careless recordkeeping and requires that a standard of ordinary and proper care be applied when determining whether negligence has resulted in the inaccuracy. . . .
>
> If inaccuracies exist and they are the result of following incorrect [recordkeeping] procedures, then the [recordkeeping] is "improper." However, if inaccuracies exist and they are the result of failing to take ordinary care while following proper [recordkeeping] procedures, then the [recordkeeping] is "careless."

*Department of Transportation, Bureau of Motor Vehicles v. Mazzarini*, 919 A.2d 295, 299-300 (Pa. Cmwlth. 2007) (citations, most quotations, and editing omitted).

We agree with the trial court that the inspection records maintained by El-Dabsheh and Sahara regarding the subject vehicle were improperly kept. Given that the trial court found that the vehicle should not have passed inspection on October 21, 2021, El-Dabsheh's marking of the inspection records to indicate that the vehicle was in good enough shape in all respects to pass inspection placed

15

inaccurate information on the records, which is sufficient to constitute improper recordkeeping. Appellants' arguments in this respect therefore lack merit.

**2.      Trial Court Docket Nos. 5575-77 (Nos. 409, 412, & 411 C.D. 2023)**

In the remaining three cases, PennDOT suspended the certifications of El-Dabsheh and Sahara for one year for fraudulent recordkeeping (including the lesser-included offenses of improper and careless recordkeeping), one year for faulty inspection of equipment or parts, and four months for improperly assigning certificates of inspection. 67 Pa. Code § 175.51(a)(1)(iii), (2)(i), (2)(v). PennDOT also issued warnings for missing or broken tools or equipment. *Id.* § 175.51(a)(4)(v). PennDOT suspended Vega's certification for one year for fraudulent recordkeeping, two months for faulty inspection of equipment or parts, and two months for improperly assigning certificates of inspection. PennDOT did not issue any discipline to Vega regarding missing or broken equipment or tools.

In association with these three cases, the trial court found the testimony of Officers Zmiejko and Perchak to be "very credible." (Trial Ct. Ops., Nos. 409, 412, & 411 C.D. 2023; FOF 28, 45.) It therefore concluded that PennDOT had established by a preponderance of the evidence that El-Dabsheh, Vega, and Sahara committed fraudulent recordkeeping, conducted faulty inspections, improperly assigned certificates of inspection, and did not possess operable, required tools to conduct inspections.[14] *Id.* at 6.

As to El-Dabsheh and Sahara, Appellants again only generically argue that PennDOT failed to establish with substantial evidence that the alleged violations

---

[14] To the extent that the trial court concluded that Vega, as an alleged part owner of Sahara, did not possess required tools or possessed broken equipment, that conclusion technically is in error. Vega was not cited by PennDOT and received no discipline for missing or broken equipment or tools.

16

were committed. First, regarding fraudulent recordkeeping, that term is not defined by PennDOT's safety inspection guidelines.[15] We have described it, however, as occurring when an entry in the MV-431 is false and entered intentionally with a purpose to deceive. *Firestone Tire & Service Center O.I.S. No. 798*, 871 A.2d at 867. "An entry made to mislead anyone inspecting the record into believing that the record was correct is deceitful." *Id.* (citation omitted).

PennDOT presented evidence that Sahara and El-Dabsheh did not possess certain items of paperwork required to document enhanced inspections together with records showing that several trailer inspections and a motorcycle inspection were recorded in the wrong record book. PennDOT did not, however, present evidence tending to establish that any records contained false information intended to deceive. Moreover, and most importantly, the trial court made no findings that the inaccurate or misplaced information and missing documents were intended to deceive. This omission is particularly important given that the initial suspensions for El-Dabsheh, Sahara, and Vega cited them with only improper recordkeeping, which was later increased to fraudulent recordkeeping. In these circumstances, the violation of fraudulent recordkeeping cannot be sustained. Only improper and careless recordkeeping, lesser-included offenses, have been established. Improper recordkeeping requires only a two-month suspension. *See* 67 Pa. Code § 175.51(a)(1).

Regarding the faulty inspection and improper assignment of certificates of inspection violations, PennDOT presented evidence that Sahara and El-Dabsheh

---

[15] In the emission inspection context, however, fraudulent recordkeeping is defined by Section 177.601 of PennDOT's regulations as "[a] recordkeeping entry not in accordance with fact, truth or required procedure that falsifies or conceals . . . [t]hat a certificate of inspection was issued without compliance with the required inspection procedure." 67 Pa. Code § 177.601.

permitted enhanced inspections to be conducted by the owner of the subject vehicles (Vega) and that photographs and other records required to document the inspections were missing. That evidence was sufficient to prove that Sahara and El-Dabsheh, who are strictly liable for inspection violations occurring at Sahara, committed the violations.

As to Vega, Appellants argue that, even accepting the trial court's credibility determinations, the only evidence in the record establishing Vega's part ownership of Sahara is El-Dabsheh's statement, recounted by Officer Zmiejko at the hearing, that Vega was a part owner or affiliate of Sahara. Appellants argue that, without more, such statements are not enough to make Vega responsible for Sahara's violations. PennDOT does not respond to this argument specifically, but argues generally that there was sufficient evidence before the trial court to support Vega's violations.

Section 175.29(a)(6)(i)-(v) imposes upon the *owner* of an inspection station the full responsibility, with or without knowledge, for:

> (i) Every inspection conducted by an employe of the inspection station.
>
> (ii) Every inspection conducted on the premises.
>
> (iii) Every certificate of inspection issued to the inspection station.
>
> (iv) Every certificate of inspection issued by the inspection station.
>
> (v) A violation of the Vehicle Code or this chapter related to inspections committed by an employe of the inspection station.

67 Pa. Code § 175.29(a)(6)(i)-(v). Thus, to be strictly liable for Sahara's violations, Vega had to be at least part owner of Sahara.

We agree with Appellants that Officer Zmiejko's statement alone, unaccompanied by any corroborating documentary evidence or any direct statements from El-Dabsheh himself, was insufficient to establish Vega's ownership of Sahara, particularly in light of (1) Vega's explanation that he was not an owner of Sahara but performed inspections there because he could not inspect his own vehicles at his inspection station, and (2) the readily accessible documentation available to determine without doubt who owns Sahara. Even accepting the trial court's finding of Officer Zmiejko's testimony as credible, we cannot conclude that PennDOT established with substantial evidence in the record that Vega was strictly liable for any of the recordkeeping violations committed by Sahara or El-Dabsheh.

Nevertheless, PennDOT did present evidence that Vega inspected vehicles that he knew were owned by VPR Motors, of which he admitted he was part owner. He also testified that he carried his own tools to Sahara to conduct inspections, which is not permitted under PennDOT's regulations. Those facts, credited by the trial court, were sufficient to establish that Vega conducted faulty inspections and improperly assigned certificates of inspection, which support the associated suspensions imposed by PennDOT.

## B.     Reduction of Suspensions

Appellants argue lastly that the trial court erred in failing to reduce the length of suspensions imposed by PennDOT. Appellants acknowledge that other penalties in lieu of suspensions, such as warnings, are permissive and optional under Section 4724(a) of the Vehicle Code, 75 Pa.C.S. § 4724(a). Appellants nevertheless insist that the trial court ignored Appellants' testimony that "they did not receive any prior, written warning[s] of the alleged violations" and that PennDOT should have

19

opted to issue warnings instead of "harsh," "draconian" suspensions. (Appellants' Br. at 14-15.) Appellants' arguments lack merit.

We long ago explained:

Authorization to make official inspections of motor vehicles in Pennsylvania is a privilege and not a right. The inspection of motor vehicles is required in an effort to remove vehicles in an unsafe condition from being operated upon the highways, with the hoped-for result of reducing loss of life and injury. Therefore, once a violation of the inspection provisions of the [Vehicle] Code has taken place[,] [PennDOT] has not only the power as set forth in Section 4724 of the [Vehicle] Code, but the duty, to suspend the certificate of appointment.

*Department of Transportation, Bureau of Traffic Safety v. Searer*, 413 A.2d 1157, 1159 (Pa. Cmwlth. 1980) (internal citation omitted). Further,

[a] trial court's role in an inspection certificate appeal is limited solely to a *de novo* determination of whether the person charged with the violation has indeed committed the violation for which the sanction was imposed. The [trial] court may not, as a parallel to exercising its discretion *as* fact[-]finder, do more than (1) affirm [PennDOT's] penalty because the law as applied to the facts heard *de novo* leads to a conclusion of a violation of the law or (2) reverse [PennDOT's] penalty because the law as applied to the facts heard *de novo* does not lead to a conclusion of a violation of law. The [trial] court may not, because of the possible unfairness or inequity of the result, reverse [PennDOT] or modify the penalty imposed.

*Snyder v. Department of Transportation, Bureau of Motor Vehicles*, 970 A.2d 523, 527-28 (Pa. Cmwlth. 2009) (citation and quotations removed) (emphasis removed). Because PennDOT's penalties are mandatory, the trial court can modify them only if it makes new factual findings and new conclusions of law. *See*

20

*Cappo*; *Department of Transportation, Bureau of Driver Licensing v. Altier*, 557 A.2d 1167, 1167 (Pa. Cmwlth. 1989).

PennDOT imposed the sentences provided in 67 Pa. Code § 175.51(a) for each of the subject violations, including a warning for the missing or broken tools violations, which the trial court found to be reasonable in each case. There is no indication that PennDOT has any discretion to impose any sentences other than those provided for in Section 175.51(a), which provides that the "[f]ailure to comply with the appropriate provisions of [Title 75 of the Vehicle Code] will be considered sufficient for suspension of inspection privileges." 67 Pa. Code § 175.51(a). Because the trial court made no findings or conclusions different than those made by PennDOT, it did not have the discretion to change the associated penalties. Appellants' arguments in this respect therefore warrant no relief.

## IV.   CONCLUSION

With regard to Nos. 410 & 413 C.D. 2023, we affirm the trial court's March 24, 2023 orders denying the appeals of Sahara and El-Dabsheh. With regard to Nos. 409, 411, and 412 C.D. 2023, we affirm the trial court's March 24, 2023 orders, in part, with regard to the faulty inspection and improper assignment of inspection certificate violations for all Appellants. We reverse those orders, however, with regard to the fraudulent recordkeeping violations as to Sahara and El-Dabsheh and all recordkeeping violations as to Vega.[16]

_____
PATRICIA A. McCULLOUGH, Judge

---

[16] Because PennDOT issued only warnings to Sahara and El-Dabsheh for the tools violations and did not cite Vega for those violations, we do not address any arguments in Appellants' brief concerning them.

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sahara Auto Sales and Service,<br>Appellant | : | **CASES CONSOLIDATED** |
| v. | : | No. 409 & 410 C.D. 2023 |
| Commonwealth of Pennsylvania,<br>Department of Transportation,<br>Bureau of Motor Vehicles | : | |
| Victor Vega,<br>Appellant | : | |
| v. | : | No. 411 C.D. 2023 |
| Commonwealth of Pennsylvania,<br>Department of Transportation,<br>Bureau of Motor Vehicles | : | |
| Ibrahim El-Dabsheh,<br>Appellant | : | |
| v. | : | No. 412 & 413 C.D. 2023 |
| Commonwealth of Pennsylvania,<br>Department of Transportation,<br>Bureau of Motor Vehicles | : | |

## ___ORDER___

AND NOW, this 7th day of October, 2025, the March 24, 2023 orders of the Court of Common Pleas of Luzerne County (trial court) at Nos. 410 and 413 C.D. 2023 are AFFIRMED. The trial court's March 24, 2023 orders at Nos. 409, 411, and 412 are AFFIRMED, in part, and REVERSED, in part, as set forth in the foregoing Memorandum Opinion. The matter is remanded to the trial court for further proceedings as necessary to carry out the rulings therein.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge